Earl Sudduth, Plaintiff-Appellant, v. Board of Fire and Police Commissioners of the City of Rockford, Illinois, Defendant-Appellee.

Gen. No. 11,835.

Second District.

April 29, 1964.

Rehearing denied May 27, 1964.

Berry & Simmons, of Rockford, for appellant.

William E. Collins, of Rockford, for appellee.

MORAN, J.

Appellant, a police officer with some nine and one-half years service on the Rockford police department, was tried by the Rockford Board of Fire and Police Commissioners on various charges of misconduct. At the conclusion of the hearing, the Board discharged Appellant from the force. He then filed a suit in the Circuit Court of Winnebago County under the Administrative Review Act seeking to reverse the order of the Board. The Circuit Court affirmed the Board's order of discharge and this appeal results.

In our view, the principal point in this appeal is Appellant's contention that the order of discharge was based upon alleged acts of misconduct other than those set forth in the written charges against him, and we shall discuss that contention first.

The pertinent section of the Cities and Villages Act, Ill Rev Stats 1961, c 24, sec 10–2–17 provides that:

". . . no officer or member of the fire or police department of any municipality . . . who has held that position for more than one year prior to the date this Division 2 becomes effective in that municipality, . . . shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. These charges shall be investigated by the board of fire and police commissioners, and in case an officer or member is found guilty, the board may remove or discharge him, or may suspend him not exceeding 10 days without pay."

█ The charges in these administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions, Joyce v. City of Chicago, 216 Ill 466, 471, 472, 75 NE 184 (1905), although the charge must be sufficiently clear and specific to allow the preparation of a defense. Schyman v. Department of Registration & Education, 9 Ill App2d 504, 510–512, 133 NE2d 551 (1st Dist 1956). Moreover, as the language of the statute itself implies, "The removal can only be for a cause set forth in (the) written charges against the officer. . ." City of Rockford v. Compton, 115 Ill App 406, 415 (2d Dist 1904); Cartan v. Gregory, 329 Ill App 307, 321, 322, 68 NE2d 193 (1st Dist 1946).

Appellant was served with the following written charges by the Chief of Police prior to the hearing:

"The charges are, one, conduct unbecoming an officer and detrimental to the police force. Second, gross inefficiency and incompetency in carrying out duties. Third, absence from duty without leave. Specific instances are as follows: (1) On September 25th and 26th, 1962 you failed to re-

port for duty. (2) On September 25th, 1962 you attempted to commit suicide by taking an overdose of seconal tablets. (3) On numerous occasions you have been guilty of disobedience, inattention to duty and negligence involving the use of firearms. The date of your suspension was September 25, 1962."

As the hearing opened, the charge of failing to report for duty on September 25 was dismissed by agreement, it appearing that Appellant had not been scheduled to work that day.

The hearing before the Board took place on November 29, 1962, and Appellant was represented by counsel. The evidence pertinent to this appeal was, in substance, as follows:

Appellant, a divorced man, awoke with a headache the morning of September 24, 1962. He was not required to work that day nor the following day, September 25. He was not due back at work until 2:30 p. m. on September 26. At about 9:00 a. m. on September 24, Appellant telephoned a Mrs. Clausen, a married woman whom he had known for some years, and asked her to come over to his apartment. She did so, and both she and Appellant testified that they remained at his apartment, engaged in conversation, until about 11:00 a. m. Thereafter, they visited various taverns in the City of Rockford, where Appellant consumed an undetermined amount of alcoholic beverages. Appellant's headache persisted throughout the day, according to his testimony, and several bartenders and tavern patrons testified on his behalf that he did complain of a headache on various occasions that day. He was seen to take pills or capsules from time to time, the exact number, again, a matter of some uncertainty. He testified that he was taking two types of pills for his headaches—seconal, a pink capsule, and fiorinal, a white tablet. Appellant admits that he took a number

197

of fiorinal pills on September 24, but states that he does not remember whether he took any seconal that day.

Mrs. Clausen testified that she and Sudduth went to their separate residences at about 1:15 a. m. on September 25. Shortly thereafter, appellant telephoned her, informing her that he still had his headache and mentioning that he either had taken or was going to take some more pills. She returned to his apartment, noticed that he looked a bit dizzy and eventually drove him to a hospital.

Appellant's own recollection of the events of September 24–25 was somewhat sketchy. He testified that he was in a "partial blackout" from about 2:00 p. m. on September 24 until he finally went home at about 1:15 a. m. the following morning. In fact, his "blackout" during that period seems almost complete. He did not remember all of the drinks he had and had only a faint recollection of the last tavern he visited, although the evidence indicates he was there for six or seven hours. He testified that he had no recollection of leaving this last tavern, nor of going home, nor of telephoning Mrs. Clausen and seeing her again at his apartment. His next recollection after his faint remembrance of the last tavern is that of waking up in the hospital on September 27, three days later.

Appellant testified that he purchased two bottles of seconal, each containing 100 capsules, about a week and one half before September 24. He stated that his mother had been taking seconal for years, and that he purchased these two bottles for her, because her supply was running low. He stated that he did not purchase these capsules for himself. His mother was out of town when he bought them and did not return until September 27.

Appellant first testified that he purchased these seconal capsules for his mother pursuant to a prescription she had for them. Upon further inquiry it devel-

198

oped that his mother's prescription was some years old and was for thirty capsules, not 200. The purchase was made by appellant from one, Hall, a fellow police officer, who was also a registered pharmacist and worked as such on a part-time basis. However, Hall was given no prescription for the seconal, and the capsules he sold Appellant were obtained by him from a wholesale drug house. This transaction between Sudduth and Hall took place at the police station. Hall, called as a rebuttal witness by the City, testified that he thought the capsules were for Sudduth's mother. He was not asked when the sale to Appellant had taken place.

Appellant testified that he had obtained seconal capsules from Hall on two or three previous occasions during 1961 and 1962. No doctor ever prescribed seconal for Appellant. He stated that he has had headaches for a number of years, and that he has been taking seconal since 1957 or 1958. He denied, however, that he ever purchased any for his own use. All purchases, he says, were for his mother.

Appellant testified that he has had "blackouts" of this kind on two or three prior occasions. He has never seen a doctor about it. He testified that, "Sometimes when I take a half pill it happens." (From the context, Appellant apparently was referring to seconal.) He then retracted his previous testimony somewhat, saying that he had never really blacked out, "except sometimes I don't remember some things."

Mrs. Clausen found one bottle of the seconal capsules at Appellant's apartment when she responded to his call early on September 25, and she delivered that bottle to the hospital. Another bottle was found in Appellant's pocket at the hospital. One of Appellant's witnesses was Dr. Paul Johnson, a Rockford physician and surgeon of some twenty-eight years experience, who had been called to attend Appellant at the hospital. He testified that he saw Appellant at about 4:30

199

a. m. on September 25, and found him to be incoherent, violent on occasion to the extent that he had to be restrained, and smelling of alcohol. It was his impression that Appellant was under the influence of alcohol. He also saw the two bottles of grain and one half seconal capsules. He testified, on direct examination, that a count had been made of the capsules in the two seconal bottles, and eight capsules were missing from one bottle, six from the other. He testified, in response to a question by Appellant's attorney, that in his opinion a combination of alcohol and seconal ". . . is a bad combination. Both are depressants individually. If you drink enough alcohol you will go into a coma. If one drinks (sic) enough seconal he will go into a coma. Combine the two and you have a peculiar behavior many times. There will be excitation, so much so it is a well known fact that there are some people who like that combination. It gives them excitation and they become violent."

Appellant's stomach was pumped, but no analysis of the contents was made. Dr. Johnson testified that a dosage of fourteen seconal tablets would result in a deep coma, or possibly death, if the stomach were not pumped.

Dr. Johnson's initial diagnosis was "delirium induced by alcohol and barbiturates." Appellant was hospitalized four and one-half days and was in restraint for about the first 36 hours. The hospital records showed that Appellant was admitted at 3:00 a. m. on September 25 and discharged the afternoon of September 29. Dr. Johnson's final diagnosis was the same as his admitting diagnosis, and he testified that, as of the date of the hearing, nothing had happened to change his opinion.

Appellant's testimony concerning the number of pills and capsules he took during this eventful period of September 24–25 is extremely vague. At one point he

testified that he did not know whether he had taken any seconal capsules at all during the period in question. Whether the mystery is attributable to the "blackout" or not is unclear. In any event, Appellant does not deny that he took seconal on September 24–25, and, from a review of the entire record, we believe the conclusion that he did take a sufficient quantity of seconal to induce the "delirium" referred to by Dr. Johnson is not against the manifest weight of the evidence. Appellant attempted. to account for the 14 missing capsules with the explanation that he had taken four capsules prior to September 24, and that his mother, upon her return from her vacation on September 27, had found six more capsules on the floor of his apartment. His mother did not testify, nor was any reason offered for her failure to do so. No capsules had been found by police Captain Pirello who searched Appellant's apartment in company with Mrs. Clausen the morning of September 25, and it appears that the apartment was unoccupied thereafter until the alleged discovery by Appellant's mother on September 27.

Joe Carsolini, a registered pharmacist, called as a witness by the City, testified that seconal is a barbiturate used as a sedative. It cannot legally be sold without a prescription.

Appellant testified that he had not attempted to commit suicide. Dr. Christa Newton, a psychiatrist, called as a witness on his behalf, testified that she interviewed Appellant for fifteen minutes on October 3, 1962, and that in her opinion, based on that interview, Appellant had not in the preceding one or two weeks suffered from any illness involving suicidal tendencies.

The Board admitted into evidence, over Appellant's objection, a copy of the Board's minutes dated May 5, 1961, and a copy of a letter written by the Board to

Appellant, dated May 6, 1961. The minutes read as follows:

".  .  . it was resolved that Officer Earl Sudduth is guilty of the charges filed against him by Chief of Police Thomas P. Boustead, namely; guilty of conduct unbecoming an officer and detrimental to the service; gross inefficiency and incompetency in carrying out duties and that said Officer Earl Sudduth be suspended from the Rockford Police Department without pay for a period of ten days commencing May 6, 1961.

"It was further resolved that the secretary be directed to send a letter to Officer Earl Sudduth advising him of said decision and that a copy of said letter be attached hereto and made a part of this record."

The Board's letter to Appellant read:

"You are hereby notified that the Board of Fire and Police Commissioners have found you guilty of the following charges presented on April 19, 1961:

"Guilty of conduct unbecoming an officer and detrimental to the service; gross inefficiency and incompetency in carrying out duties.

"You are further notified that you are hereby suspended from the Rockford Police Department commencing May 6, 1961 for a period of ten (10) days without pay.

"This is to advise you that you will not be entitled to any back pay during the time of your suspension by Chief of Police, Thomas P. Boustead, which commenced April 4, 1961 or during the time of suspension by the Board of Fire and Po-

lice Commissioners which commenced April 8, 1961."

The order of the Board in the instant case, dated December 3, 1962, is as follows:

"The Board finds Officer Sudduth guilty of conduct unbecoming an officer and detrimental to the police force, in that on September 24 and 25, 1962, while in company with a married woman, not his wife, he visited various taverns in the City of Rockford indulging in the excessive use of intoxicating liquors and administered to himself without a prescription a habit forming hypnotic drug called, Seconal, as a result of which he had to be hospitalized and physically restrained because of delirium induced by alcohol and drugs, so that he was unfit for duty, it appearing that he had, on a previous occasion, failed to report for duty because of the excessive use of barbiturates and had for some years been given to the use of barbiturates to ease the pain of alleged headaches, though no physician had prescribed their use and, it further appearing that this same officer on April 19, 1961 had negligently and carelessly discharged a loaded pistol at police headquarters endangering the life of another officer for which he was on May 6, 1961 suspended for ten days by this Board.

"It is, Therefore, Ordered:

"That Policeman Earl Sudduth, be, and he is hereby discharged and dismissed from the Rockford Police Force."

We come now to the question of whether the Appellant has been discharged on grounds other than those set forth in the charges. A point by point comparison of the findings and the charges will be helpful.

203

It will be noted that the Board's findings commence with the statement that it "finds Officer Sudduth guilty of conduct unbecoming an officer and detrimental to the police force . . ." and that this same general language is found in the opening portion of the written charges. The City does not contend on this appeal that an officer could properly be brought to trial upon a general charge of "conduct unbecoming an officer and detrimental to the police force," without a more detailed specification, or that an order of the Board discharging an officer on such general grounds, without specific findings, could be sustained. See Farmer v. Civil Service Commission of Chicago, 329 Ill App 326, 68 NE2d 193 (1st Dist Abst 1946), holding that discharge of an officer based on a mere general finding that he was "guilty of conduct unbecoming a police officer" was a nullity, since the officer was entitled to know the facts upon which his discharge was based.

The findings go on to recite that on September 24 and 25, 1962

". . . while in company with a married woman, not his wife . . ."

which we must ignore, since none of it is contained in the written charges. Cartan v. Gregory, supra; City of Rockford v. Compton, supra. The next portion of the findings recites that:

". . . he visited various taverns in the City of Rockford indulging in the excessive use of intoxicating liquors and administered to himself without a prescription a habit forming hypnotic drug called, Seconal, as a result of which he had to be hospitalized and physically restrained because of delirium induced by alcohol and drugs . . ."

204

The only specific charge to which this finding might relate is the allegation that,

"On September 25th, 1962, you attempted to commit suicide by an overdose of Seconal tablets."

That there is a variance between a charge that Appellant attempted to commit *suicide* by an overdose of seconal, and a finding that put himself in a hospital in a violent state of delirium due to seconal and alcohol, is obvious. The question we have to answer, however, is not whether a technical distinction exists, but whether the Appellant has been denied substantial justice.

Faced with a charge that he attempted suicide by means of seconal, Appellant was obviously on notice that he was going to be confronted with evidence that he took seconal, and that it had ill effects upon him. We believe he was also on notice that evidence of his consumption of alcohol on the occasion in question would be presented, and that the alcohol he did consume had something to do with his physical condition during the period involved. Appellant called as his own witness—out of order and before the City had rested—Dr. Johnson, who testified that Appellant's condition at the time in question was delirium due to a combination of seconal and alcohol. We think the Board's finding that Appellant put himself in the hospital in a condition of delirium, due in part to the use of seconal, is within the general scope of the original charge of attempted suicide by means of seconal. This is not a matter of the Board having gone beyond the charge, and having found the Appellant guilty of some conduct more serious than or substantially different from that charged. If analogies are helpful, we think that this particular finding of the Board is somewhat akin to a conviction on a lesser included offense, such as a manslaughter verdict on a murder

charge. See 21 ILP, Indictments and Informations, sec 131. See also Hayes v. Civil Service Commission of Chicago, 348 Ill App 146, 108 NE2d 505 (1st Dist 1952), where a charge that a Chicago policeman violated a department rule against outside employment by engaging in the tavern business, without specifying that such conduct also constituted a violation of the state law prohibiting law enforcement officers from engaging in the tavern business, was broad enough to justify a finding that the policeman did engage in such business "contrary to law." The Court observed that, "In our view there was no necessity of a specific charge of the violation of the Dram Shop Act since the charges contained allegations of facts which were sufficient to apprise plaintiff of all the matters alleged against him." 348 Ill App at 150, 151, 108 NE2d at 507. Similarly, we feel that the charge against Appellant that he attempted suicide by means of an overdose of seconal was sufficient to apprise him of the entire factual situation he was required to meet.

The Board's finding against Appellant continues:

". . . so that he was unfit for duty . . ."

It is true that the charge does not expressly allege, in terms, that Appellant was "unfit for duty." It does allege, however, that on September 25, he attempted suicide by taking an overdose of seconal, and that he "failed to report for duty" on September 26. Appellant knew prior to the hearing that he had been due to report for work at 2:30 p. m. on September 26; he knew that he had failed to report at that time; and he also knew that the reason he had failed to report was that he was occupying a hospital bed, still delirious from the effects of the alcohol and seconal. Under these circumstances we think the language of the

206

charge gave Appellant ample notice that he would be confronted with evidence that he was, in fact, unfit for duty, and the finding of the Board in this regard does not go beyond the substance and reasonable import of the charge.

The finding of the Board continues:

". . . it appearing that he had, on a previous occasion, failed to report for duty because of the excessive use of barbiturates and had for some years been given to the use of barbiturates to ease the pain of alleged headaches, though no physician had prescribed their use . . ."

We see nothing in the charge that would put Appellant on notice that his past use of barbiturates was to be in issue, let alone a ground of his discharge, and accordingly, this portion of the Board's findings cannot be used to support the order of discharge.

The final portion of the Board's findings reads as follows:

". . . and, it further appearing that this same officer on April 19, 1961, had negligently and carelessly discharged a loaded pistol at police headquarters endangering the life of another officer for which he was on May 6, 1961, suspended for ten days by this board."

The charge recites that "On numerous occasions you have been guilty of disobedient, inattention to duty and negligence involving the use of firearms." We do not find it necessary to decide whether this portion of the charge is sufficient to support the Board's finding relating to the firearms incident of April 19, 1961, because, as we will point out later in this opinion, there was no evidence to support this portion of the Board's finding.

207

We proceed now to a consideration of Appellant's next contention—that the findings of the Board are against the manifest weight of the evidence. Appellant concedes that the Circuit Court was authorized to set aside the findings of the administrative agency only if they were against the manifest weight of the evidence, and that this Court has no greater right. Adamek v. Civil Service Commission, 17 Ill App2d 11, 17, 149 NE2d 466 (1st Dist 1958). And, in order to reach the conclusion that a particular finding is against the manifest weight of the evidence, a court must be satisfied that "an opposite conclusion is clearly evident." Kelley v. Civil Service Commission, 31 Ill App2d 115, 117, 175 NE2d 630 (1st Dist 1961); Arboit v. Gateway Transp. Co., 15 Ill App2d 500, 507, 146 NE2d 582 (2d Dist 1957); Ritter v. Hattesberg, 14 Ill App2d 548, 555, 145 NE2d 119 (2d Dist 1957); Niman v. Pecatonica Livestock Exchange, 13 Ill App2d 144, 151, 141 NE2d 327 (2d Dist 1957). Confining our inquiry to those findings which we have held to be fairly within the written charges, the question is, then, whether conclusions opposite to those findings are clearly evident. We believe they are not. We do not believe it to be "clearly evident" that Appellant took no seconal during the period of September 24–25, or that he took an insufficient amount of it to cause physical and mental complications. Nor do we believe it to be clearly evident that he imbibed but an insignificant amount of alcohol during his rounds of the various taverns with Mrs. Clausen. And, when Appellant's own witness, Dr. Johnson, the treating physician, testified that in his expert opinion Appellant was in a state of delirium induced by alcohol and barbiturates, we find ourselves not only disinclined to reach the opposite conclusion, but, rather, impelled to the same conclusion. The uncontradicted evidence shows that Appellant did not regain consciousness until September

27, and that he had been scheduled to work on September 26. Accordingly, we believe the Board's findings that Appellant,

> ". . . on September 24 and 25, 1962, . . . visited various taverns in the City of Rockford indulging in the excessive use of intoxicating liquors and administered to himself without a prescription a (habit forming hypnotic) drug called, Seconal, as a result of which he had to be hospitalized and physically restrained because of delirium induced by alcohol and drugs, so that he was unfit for duty . . . ,"

are not against the manifest weight of the evidence, but are entirely in accord with the evidence. The bracketed portion of the foregoing quotation is not supported by the evidence, but we deem this immaterial since, whatever the properties of seconal, its effect upon Appellant was obviously an undesirable one.

The additional finding of the Board that

> ". . . this same officer on April 19, 1961 had negligently and carelessly discharged a loaded pistol at police headquarters endangering the life of another officer for which he was on May 6, 1961, suspended for ten days by this Board,"

has no proper evidence in the record to support it. The only evidence offered by the City in this connection was the copy of the Board's resolution of May 5, 1961, and its letter to Appellant dated the following day, informing him of his suspension. Neither of these documents refers to any incident involving negligence with a loaded pistol or endangering the life of another officer. They refer, simply, to a finding that Appellant was "guilty of conduct unbecoming an officer and detrimental to the service; gross inefficiency and in-

competency in carrying out duties." As we have already noted, such a general finding, containing no specification of the particular acts of which the officer is found guilty, is a nullity. Farmer v. Civil Service Commission, supra. It does not appear that Appellant sought review of that finding, and we are not, of course, reviewing it here, except to hold that it has no value as evidence in the instant proceeding. The order of the Board discharging Appellant in the present case was entered on December 3, 1962. After suit had been filed in the Circuit Court seeking to set aside that order, the Circuit Court, apparently on its own motion, entered an order on April 12, 1963, some three months after the Board's order of discharge, that the transcript of the hearing which resulted in the order of May 5, 1961, be made a part of the record in this case. The attorney for the City then appeared before the Board on April 16, 1963, pursuant to notice served upon Appellant's attorney, and moved that the 1961 transcript be made part of the record in this cause, in accordance with the order of the Circuit Court. Appellant's attorney made no objection to this procedure, and the 1961 transcript was thereupon marked as an exhibit and made a part of the record herein.

Appellant has abstracted this transcript of the 1961 hearing and has devoted a considerable part of his brief and argument to a rehashing of the merits and even the evidentiary rulings in the 1961 matter. He has not questioned the propriety of the inclusion of the 1961 transcript in the record of this cause, but has confined his argument to the question of whether the incidents involved in the 1961 hearing can again be made the basis of substantive charges against him. Appellee contends that the 1961 incident involving the pistol was considered by the Board in the instant pro-

ceeding only by way of *aggravation,* and not as an independent substantive charge. From our review of the record we are unable to tell how the Board used the 1961 incident. The written findings merely recite the incident along with the events of September 24–25, making no distinction that is apparent to us.

█ In any event, there was no evidence presented during the course of the instant hearing which supports that portion of the findings which relates to the pistol incident and this fact cannot be changed by supplementing the record with a transcript not considered by the Board at the time it discharged Appellant. Nor does the Appellant's failure to object to the procedure have any bearing upon the matter. The failure to object cannot create evidence, and the fact is that there was no evidence before the Board concerning the gun incident at the time it entered its order. And, once its order was entered, the Board had no authority, by direction of the Circuit Court or otherwise, to supplement the record upon which the order was based. See Cartan v. Gregory, 329 Ill App 307, 317, 68 NE2d 193 (1st Dist 1946):

> "The discharge of each plaintiff was ordered and executed on June 16, 1944. The jurisdiction of the Commission was then exhausted. The subsequent preparation, typing and filing of the other documents purporting to be a finding and decision, was outside the limits of the jurisdiction of the Commission."

See also Farmer v. Civil Service Commission, supra:

> "The record should be complete before he is discharged. There is no warrant in law for making up the record to support the discharge after a person has been discharged. Such a practice cannot be countenanced."

211

Therefore, we hold that the "gun incident" could not be considered by the Board for any purpose, nor can Appellant's discharge be supported in any degree by reference to that incident.

■■  We must now determine whether the improper portions of the Board's findings so infect the findings as a whole that the order of discharge must be set aside. To review those portions of the findings which we deem improper:

> (a)  The reference to Appellant's consorting with a "married woman not his wife" is improper, since this was not part of the charge;
>
> (b)  The finding that Appellant had on a previous occasion failed to report for duty because of the excessive use of barbiturates was not part of the charge, nor do we find any evidence in the record to support such a finding;
>
> (c)  The finding that Appellant "had for some years been given to the use of barbiturates to ease the pain of alleged headaches, though no physician had prescribed their use" goes beyond the charges;
>
> (d)  The finding concerning the gun incident had no evidence to support it.

These infirmities in the Board's findings are not insignificant. It is regrettable that the charges were not drawn with greater attention to the anticipated evidence, and that the findings were not drawn with greater attention to the charges and the evidence actually heard. We can readily conceive of cases which would require reversal because of such irregularities. However, it is apparent that the principal concern of the Board in this case was Appellant's conduct on September 24–25, 1962, and his resultant delirium

which persisted for at least another two days. We find it impossible to conclude that this ground, standing alone, would not have resulted in Appellant's discharge from the police force. Conduct of an apparently less serious character has been held sufficient to warrant discharge. See, e. g., Sayles v. Board of Fire and Police Com'rs of City of Champaign, 25 Ill App2d 262, 166 NE2d 469 (3rd Dist 1960) (failure to pay personal debts and execution of wage assignment in violation of department rules); Hammers v. Board of Fire and Police Com'rs of City of Mattoon, 10 Ill App2d 218, 134 NE2d 647 (3rd Dist 1956) (leaving duty station); Martin v. Civil Service Commission, 7 Ill App2d 128, 129 NE2d 248 (1st Dist 1955) (two officers discharged, one for failing to turn in an arrested person's property without delay, and the other for unauthorized signing of another's name to inventory receipt). The statute does not define the necessary "cause" for discharge, and the Board may exercise its reasonable judgment and discretion in determining what conduct does amount to "cause." City of Aurora v. Schoeberlein, 230 Ill 496, 502, 82 NE 860 (1907); Kammann v. City of Chicago, 222 Ill 63, 65, 66, 78 NE 16 (1906). If we believed there was any likelihood of the Board having reached a different conclusion had its finding been free of the errors noted, we would reverse. However, we do not believe that the result would have been any different had the irregularities mentioned not occurred, and, accordingly, we hold that the errors in the proceedings do not require reversal. Johnson v. Duke, 247 Ill App 372, 377 (2d Dist 1927). We do not regard the proceedings at any stage below as a model of how such matters should be conducted, but we are convinced from our review of the entire record that substantial justice has been done.

We have considered the remaining assignments of error and find them to be without merit, and the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

ABRAHAMSON, P. J. and CARROLL, J., concur.