CITY OF SAN ANTONIO et al., Petitioners,

v.

Bill POULOS, Respondent.

No. A–11543.

Supreme Court of Texas.

Nov. 22, 1967.

Rehearing Denied Jan. 17, 1968.

Sam S. Wolf, City Atty., J. Bruce Aycock and William R. Ward, Asst. City Attys., San Antonio, for petitioners.

Jack Paul Leon, San Antonio, for respondent.

HAMILTON, Justice.

This is a statutory appeal under Article 1269m [1] of a civil service commission proceeding discharging a police detective. The trial court set aside the permanent dismissal by the commission; the Court of Civil Appeals affirmed. 403 S.W.2d 168. Petitioners here are the City of San Antonio, its Firemen's and Policemen's Civil Service Commission and Chief of Police. Respondent is Detective Investigator Bill Poulos.

The Chief of Police indefinitely suspended Poulos effective March 6, 1965. He timely filed the following statement with the Commission and furnished a copy thereof to Poulos:

"* * *

"There is probable cause to believe that Detective-Investigator Bill Poulos has violated certain provisions of Rule XX, Section 120, Personnel Rules of the City of San Antonio, said rules having been adopted on July 17, 1952, by the Firemen's and Policemen's Civil Service Commission as the Civil Service Rules for the Fire and Police Departments of the City of San Antonio and violation of which are grounds for dismissal from the said Police Department.

"Section 120 of the aforesaid Personnel Rules of the City of San Antonio provides that the following shall be grounds for removal:

"Neglect of duty;

"Failure or refusal to carry out instructions;

"Violation of any of the rules and regulations of the department.

---

1. All references to articles herein are to Vernon's Texas Revised Civil Statutes Annotated.

"Instructions to members of the Police Department of the City of San Antonio are found in the Rules and Regulations of the Police Department and the ones that Detective-Investigator Bill Poulos violated are as follows:

"1. That portion of Rule 16 which provides:

" 'Officers shall report promptly * * * all information they may receive about any violation or suspected violation.'

"2. That portion of Rule 17 which provides:

" 'Officers having information regarding any felony * * *, and immediate action is not required, shall give all details to his Superior Officer and submit a written report as specified in the Reporting Regulations.'

"3. That portion of Rule 29 which provides:

" 'No member of the Department shall wilfully misrepresent any matter, sign any false official statement or report * * *.'

"The specific acts allegedly committed by Detective-Investigator Bill Poulos which are in violation of the aforesaid Civil Service Rules were:

"About six weeks or two months ago Detective-Investigator Bill Poulos showed Detective C. M. Gomez two pistols and a Model 21 Winchester, 12 gauge side by side shotgun with an extra set of barrels having '147' for the first three digits of the serial number of the gun, and offered to sell Detective-Gomez the gun. At that time there was a piece of adhesive tape covering a part of the breech of the gun which Detective Poulos told Detective Gomez not to remove since there was something there which he did not want Detective Gomez to see. Detective Poulos told Detective Gomez that he had a friend who could re-engrave

over anything that had been engraved on a gun and you wouldn't be able to tell what was on the gun in the first engraving. Detective Gomez was willing to buy the gun but would not do so unless he was given a receipt for it. Detective Poulos told Detective Gomez that he was not going to give anyone a receipt so Detective Gomez refused to buy the shotgun and the pistols.

"Subsequently Detective Gomez checked the police records and discovered that a Model 21 Winchester 12 gauge shotgun with extra barrels with the serial number '14767' had been reported stolen in a burglary and the stolen gun had the name 'A. C. Cowles' engraved upon the breech at the location of the adhesive tape upon the shotgun Detective Poulos had shown him. A few days thereafter Detective Gomez told Detective Poulos that burglary detail had a case in which a shotgun of the same model and type including an extra set of barrels had been taken. Detective Poulos said he did not believe it was the same gun. Detective Poulos filed no report on the shotgun in question.

"When subsequently question (sic) concerning the guns he claimed he had been given them by Norman Spears to be sold if possible. When Norman Spears was asked about the gun he, in the presence of Detective Poulos, said he had never had a Model 21 Winchester and he had not given Detective Poulos the two pistols to sell for him. Subsequently Detective Poulos stated he had obtained the shotgun and the two pistols from Earl M. Brooks to whom he returned the guns after he had shown them to Detective Gomez. Mr. Brooks states he had been asked to sell the guns by a customer whose name is Charlie Powers of Austin, Texas, and that he asked Detective Poulos to try to sell the guns for him. Mr. Brooks further states that upon request of Mr. Powers, he secured the guns from Detective Poulos and returned them to Mr. Powers.

"* * *"

The above statement filed by the Chief of Police with the Civil Service Commission charges the Respondent Poulos with violating portions of three of the Rules and Regulations of the Police Department; Rules 16, 17 and 29 as set out above.

Respondent Poulos filed exceptions to the statement saying that the specific acts of Respondent alleged by the Chief do not constitute a violation of either of the above rules. Respondent, further, excepted on the grounds that the statement does not point out which specific acts of Respondent violate a particular rule.

The Commission overruled these exceptions, and after the hearing found that Respondent had violated two of the three rules he was charged with violating; i. e., Rules 16 and 29.

The District Court on appeal found that the charges on their face failed to allege any specific violation of any Civil Service Rule (and for that reason the failure of the Commission to sustain Poulos' special exceptions was arbitrary, capricious and unreasonable), and that the order of permanent dismissal was not supported by substantial evidence.

The Court of Civil Appeals in affirming the judgment of the trial court held that the statement by the Chief was not sufficient to charge Poulos with the violation of Rule 29, but was sufficient to charge Poulos with the violation of Rule 16. However, it further held that, there was not substantial evidence produced at the trial to support the charge.

We agree with the Court of Civil Appeals that the statement was not sufficient to charge Poulos with a violation of Rule 29, but for a different reason than given by that court.

Petitioners argue that Poulos violated Rule 29 of the Police Department regulations when he made a false representation to Captain Benfer. The entire rule is as follows:

"No member of the department shall willfully misrepresent any matter, sign any false statement or report, *perjure himself, or give false testimony before any court, grand jury, board, hearing or commission.*" (Emphasis added.)

That portion of the rule italicized above was omitted from the Chief's charges. The Court of Civil Appeals held that "willfully misrepresent any matter" only applied to statements made "before any court, grand jury, board, hearing or commission." We disagree with the construction given this rule by the Court of Civil Appeals. Such a construction is redundant and inconsistent, for "willfully misrepresent" includes perjury and giving false testimony, while the application of the phrase in question to "sign any false statement or report" would be meaningless.

It is contended by Petitioner that the construction of the rule as given by the Court of Civil Appeals would greatly restrict its intended scope. Four distinct types of misconduct relating to the performance of the duties of a member of the San Antonio Police Department are comprehended in Rule 29: willful misrepresentation, whether oral or written; the signing of any false statements or reports; the commission of perjury; and the giving of false testimony before a court or grand jury, or in an administrative hearing of a board or commission.

It is clear from its terms that the final clause of Rule 29 "before any court, grand jury, board, hearing or commission" was not intended to qualify and limit all the preceding proscribed acts. A police officer does not ordinarily sign official statements or· reports in connection with court, grand jury, or administratrive proceedings. Perjury is not limited in statutory definition to such proceedings but is committed by a deliberate and willful false statement under the sanction of an oath or

affirmation required or authorized by law. See Art. 302 of the Vernon's Ann.Penal Code. False testimony, on the other hand, may be given under circumstances where perjury has not been committed, e. g., in an administrative hearing in which the law does not require an oath or affirmation but where, nevertheless, a person assumes an oath before testifying. Compare the definition of false swearing, Art. 310 of the Penal Code.

■ Respondent argues that the construction we have given Rule 29 would render the phrase "willfully misrepresent any matter" applicable to statements made to all persons under all circumstances. The whole answer is that the rules and regulations of the San Antonio Police Department necessarily are, and must be, referable to the performance of the duties of a member of the department, and to the accomplishment of the statutory purpose of securing and maintaining an efficient police department composed of trusted and competent personnel. See Art. 1269m, §§ 5 and 16a. In our view a proper application of this rule requires the holding that a willful misrepresentation by a police officer of a matter arising in the course of official duties constitutes a violation of the rule.

Having held that the Court of Civil Appeals was in error in holding that the Chief's allegation of a violation of Rule 29 was insufficient because it did not allege that the purported misrepresentation was made before some court, grand jury, board, commission, or at a hearing, we must determine whether the trial court's action in sustaining Respondent's exception to this part of the charge must be sustained on some other ground. Respondent contends that the alleged specific acts contained in the statement are insufficient to charge a violation of Rule 29. He correctly assumes that the last paragraph set out in the above charge manifests those specific acts which are deemed to constitute a violation of Rule 29. He points out that Poulos is charged with making a statement to some-

one, sometime, and later making another statement inconsistent therewith to someone without stating to whom the first statement was made, or to whom the second statement was made; or under what circumstance either statement was made, or which statement was the misrepresentation.

■ It follows from this interpretation of Rule 29, that for a charge of "willful misrepresentation" to be valid in this situation it must at least allege to whom such misrepresentation was made, and the official capacity in which it was made. Under the charges as made the misrepresentation could have been made to anybody, under any circumstance and about any matter, whether in the line of duty or not. Such misrepresentation could have been made to Gomez, a newspaper reporter, or some prospective purchaser of the guns in question, without being a violation of Rule 29 as we have construed it. We therefore, hold that the statement of the Chief of Police is insufficient to charge a violation of Rule 29.

■ We do not agree with the Court of Civil Appeals holding that the alleged acts of Poulos contained in said statement are sufficient to charge a violation of that part of Rule 16, reading as follows:

"Officers shall report promptly * * * all information they may receive about any violation or suspected violation."

To allege a violation of this part of Rule 16, there must be an allegation of at least three facts. *First*, there must be an allegation of an actual or suspected violation of the Penal Code. *Second*, there must be an allegation that the suspended officer had received information about such violation or suspected violation. *Third*, there must be an allegation that this information was not promptly reported by the officer.

There is no question but that in the charge the Chief stated a violation wherein a shotgun of a certain model and type had been taken in a reported burglary.

■ The information which Poulos is charged with having received is that he had in his possession a shotgun of the same model and type which had been taken in the burglary. In our opinion this allegation falls short of charging Poulos with having received information about the alleged burglary. The statement charges that Poulos said he did not believe the gun he had was the same one taken in the burglary, and it does not allege that the gun he had was the same gun taken in the burglary. Neither does the statement anywhere allege that the Chief believed the gun which Poulos had was the one that was taken in the burglary. If it was not the same gun, then the possession of the gun that Poulos had shown to Detective Gomez does not constitute information about the burglary.

Furthermore, whatever information about the burglary Poulos is charged with receiving, there is no charge that Poulos failed to promptly report it. There is a charge, however, in the statement: "Detective Poulos filed no report on the shotgun in question." It will be noted that Rule 16 does not require that a report be filed. For a report to be filed, such report must necessarily be in writing. Rule 17 required that a written report be submitted, but as we have noted above, the Commission did not find that Poulos had violated Rule 17. We, therefore, hold that the statement failed to specifically point out the act, or acts, by Poulos which constituted a violation of Rule 16.

■ The written statement required to be filed with the Commission by the Department Head, when he suspends an officer, need not be highly technical, but Section 16, Article 1269m does contain a simple requirement which in our opinion should be strictly followed. Said Section provides that the statement:

"* * * [S]hall not only point out the civil service rule alleged to have been violated by the suspended employee, but shall contain the alleged acts of the employee which the department head contends are in violation of the civil service

rules. It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him."

If the Department Head is going to fire an officer for having in his possession a stolen gun which he failed to report, then the Department Head ought to be able to allege those facts and make proof thereof. From six weeks to two months had transpired after the alleged transaction occurred before the officer was suspended and before charges were filed. In that length of time the Chief should have been able to learn sufficient facts to charge this officer with a rule violation, if there had been one. Having held that the statement filed by the Chief of Police was insufficient to charge a violation of Rule 16, we do not reach the question of whether or not there is substantial evidence to support such charge.

■ We think one reason the Chief of Police fell into error in making his charges against the officer is that he alleged that the officer violated three different rules, and then to support these violations he alleged a group of facts without pointing out the facts which applied to a particular rule violation. The better procedure for a Department Head in such a situation would be to consider separately each rule which was alleged to have been violated and then state the precise factual basis for the violation.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

GRIFFIN, WALKER, NORVELL and POPE, JJ., dissenting.

Dissenting Opinion

POPE, Justice.

I respectfully dissent. The Commission ruled that the charges lodged against of-

ficer Poulos were sufficient and that he had violated these rules set out in the charges:

"RULE XX, Section 120. Neglect of duty;

Failure or refusal to carry out instructions;

Violation of any of the rules and regulations of the department.

1. That portion of Rule 16 which provides:

'Officers shall report promptly * * * all information they may receive about any violation or suspected violation.'

2. That portion of Rule 29 which provides:

'No member of the Department shall willfully misrepresent any matter, sign any false official statement or report * * *.' "

The district court on appeal held that the charges did not assert any specific rule violation and also that there was no substantial evidence to support any of the charges. The court of civil appeals ruled that the charges were sufficient, but there was not substantial evidence which supported either a violation of rule 16 or Rule 29. The opinion is silent about the Commission's conclusion that Poulos was guilty of neglect of duty. The majority therefore, does not reach the question of substantial evidence. In my opinion, the majority has imposed requirements for the assertion of civil service violations more suitable to an indictment for violation of the penal code, a thing with which we are not concerned.

Section 5, art. 1269m, Tex.Rev.Civ.Stat. Ann., authorizes the adoption of rules and regulations for the government of policemen. It lists a number of reasons for the removal or suspension of an officer. Neglect of duty is one of those listed. Violation of the rules of the Police Department is another. The original charges against Poulos first stated three general charges:

(1) Neglect of duty, which is not discussed by the majority, (2) failure or refusal to carry out instructions, and (3) violation of the rules and regulations of the department. The charges then specify Rules 16 and 29 as those which were violated. The majority regards and treats the two rules as relevant only to the third general charge. The violation of those rules is equally relevant to the charge of neglect of duty. Throughout all of these appellate proceedings, the neglect of duty charge has been ignored by the courts, but it has been insistently urged by the Commission as a sound independent basis for upholding the Commission order.

The first charge made by the Chief of Police, Bichsel, was that Poulos was guilty of neglect of duty in that he violated Rule 16. This Court has committed the same error as the court of civil appeals in requiring proof of elements not embraced within the charged offenses. This is illustrated by that court's holding that " * * the crux of the allegations against Poulos was that he was fencing stolen property in attempting to sell this expensive shotgun, the appellants wholly failed to prove that the shotgun Poulos was attempting to sell was stolen from Cowles or from any other person." The majority opinion makes the same mistake by holding that the charges are insufficient, because "the statement nowhere alleges that the gun he (Poulos) had was the same gun taken in the burglary." These holdings add elements not found in nor required by a charge of neglect of duty or the charge of failure to report a suspected offense. Such holdings require proof of a crime in addition to proof of a rule violation. The holdings mean that, if the criminal defendant goes free, the carelessness and neglect of officers who broke the departmental rules would also be free of charges. The holdings add to a rule, which requires reports for "suspected violations," the words, "if a crime is later proved." Stated conversely, an officer need report no suspected violations which are later proved to be unfounded.

Two charges, one that Poulos was guilty of neglect of duty in failing to report promptly a suspected violation, as well as the independent charge of violating Rule 16 based upon the facts specified in the charges were stated with the certainty required by law. Section 16 of art. 1269m embodies the required standards:

"The written statement above provided to be filed by the department head with the Commission, shall not only point out the civil service rule alleged to have been violated by the suspended employee, but shall contain the alleged acts of the employee which the department head contends are in violation of the civil service rules. It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of on the part of such employee, it shall be the duty of the Commission promptly to reinstate him. * * *."

In Bolieu v. Firemen's & Policemen's Civil Service Commission, 330 S.W.2d 234 (Tex.Civ.App.1959, writ ref. n. r. e.) it was held that civil service hearings are not subject to "the stringency of the criminal law * * * and that § 5 of art. 1269m recognizes that a general charge, supported by an assertion of specific acts, is a suitable procedure "for a profession which demands a state of readiness, strict discipline, and a measure of obedience and valor not expected of ordinary callings." This is a civil action administered by laymen in which courts have not required charges that meet the precision of an indictment. City of Evansville v. Nelson, 245 Ind. 430, 199 N.E.2d 703 (1964); Sudduth v. Board of Fire and Police Commissioners, 48 Ill. App.2d 194, 198 N.E.2d 705 (1964); Marchiafava v. Baton Rouge Fire and Police Civil Service Board, 233 La. 17, 96 So.2d 26 (1957); Sullivan v. Municipal Court of Roxbury Dist., 322 Mass. 566, 78 N.E.2d 618 (1948); Hogan v. Fausz, 243 Ky. 514, 49 S.W.2d 333 (1932). In *Marchiafava,*

supra, the policeman was charged with "engaged in handing out campaign literature and wearing a badge advocating the election of a candidate in the Mayor-President race on election day." He complained that the notice was too uncertain. The Louisiana Supreme Court reasoned that the notice informed the officer with sufficient particularity because there was only one Mayor-President election and it occurred on July 31, 1956. The court said that the charge was not an indictment by the grand jury and the Chief of Police who preferred the charges was not an attorney. The very nature of the charge, neglect of duty, is that it consists often of non-action. It has been held that in such charges, even time and place may not be necessary to the validity of the charge. Evansville v. Nelson, supra.

Contrary to the view taken by the majority, it is my opinion that the charges were rather carefully drawn so as to give Poulos notice of the event for which he was charged. They follow the format suggested in two earlier cases in which the City of San Antonio was involved. Bolieu v. Firemen's and Policemen's Civil Service Commission, supra; Harless v. Bichsel, 327 S.W.2d 791 (Tex.Civ.App.1959, no writ). After stating the general charge and the rules, they specifically state that about six weeks or two months before the charges were filed, which would be between the fifth and nineteenth of January, 1965, Poulos had in his possession a model 21 Winchester, 12 gauge, side by side, shotgun with an extra set of barrels bearing a serial number, the first three digits of which were 147. He offered that gun for sale to Detective Gomez; Poulos said he would not give the buyer a receipt for a sale, and he told Gomez not to remove an adhesive covering on the breech of the gun "since there was something there which he did not want Detective Gomez to see." The charges stated that Gomez saw the first three digits of the serial number on the gun and they were 147. The charges further stated that Gomez discovered from the police records that a gun of the same

model, make, gauge, and with the same first three serial numbers had been reported stolen in the burglary detail. The charges assert that Gomez told Poulos that the burglary detail had reported such a gun as stolen. The charges then state, "Detective Poulos filed no report on the shotgun in question."

We come then, to the question which the majority has not reached, was there substantial evidence to support the order of the Commission in suspending Poulos? The trial court's and our power in an appeal from an order of an administrative agency is stated in Fire Department v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664 (1962). "The extent of such a review has been rather generally held to be limited to an ascertainment of whether there was substantial evidence reasonably sufficient to support the challenged order." The question is not whether a court agrees with the decision upon the basis of weighing the conflicting evidence. Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W. 2d 181, 183, 27 A.L.R.2d 965 (1951).

Poulos, himself, made a number of admissions. He admitted trying to sell the gun to Detective Gomez on January 16, 1965 and that he was asking $550.00 for it. He admitted he had never seen such a handmade gun in his life, though he had sold a number of guns. He admitted telling his superior, Captain Benfer, who questioned him in late January about his sale of guns, that he had obtained this gun from Norman Spears. He admitted that Captain Benfer during that same conference called in Norman Spears, a local businessman, who denied Poulos' statement to his face. In the trial court, he admitted that he had not obtained the gun from Spears. He admitted he made no report about the gun. He admitted he was evasive in answering Captain Benfer's questions about the gun. He said it was possible that there was on file a burglary report of a gun that had the same first three serial numbers as the gun he showed Gomez and that he did not check

the burglary reports. He denied telling Gomez he would give no receipt, that the gun had an adhesive covering over the breech or suggesting to Gomez that the gun could be reengraved.

Detective Gomez testified. He said that he remembered the first three digits of the serial number as 147, the gun had a tape across the breech, Poulos told him "Don't take that off * * * don't mess with that part there." He said the gun was a rare one, handmade, expensive, that he told Poulos it would be easy to trace that kind of a gun to its original owner by writing to the factory. He said that Poulos told him he would not give a receipt for the sale. He said that about one week after Poulos tried to sell him the gun, he told Poulos that he thought the gun was stolen, but Poulos said that he thought it was a different gun.

Captain Benfer, who began the investigation against Poulos, testified that Poulos evaded his questions, that Norman Spears denied in the presence of Poulos that he had supplied Poulos with the gun and testified that the morning after the first questioning, Poulos again refused to tell him where he obtained the gun. Lieutenant W. J. Robitzsch, Poulos' superior, had been present while Captain Benfer questioned Poulos. He said that Poulos mentioned several names of persons from whom he had obtained guns—Spears, Meyers, Snyder, Neal Beard estate. He never did mention the true source of the gun which other evidence showed was from a man named Brooks in Austin, to whom Poulos returned the gun.

Poulos justified his admitted concealment of the true facts on the grounds that Captain Benfer did not like him and he thought that Captain Benfer was trying to involve him in a burglary. He attributed other discrepancies in his statements to the fact that he had dealt with a number of guns for a number of people and did not recall all the facts. He made no effort to prove that there was no suspected viola-

tion by reason of facts he knew or any investigation he made. Instead of disclosing such facts, if he had them, he refused to tell his superior officers the true source of the gun.

By way of summary, the majority states three elements which the charges should include to constitute a valid charge for violation of Rule 16, failure to report suspected violations. The first is an allegation of an actual or suspected violation of the penal code. The charges are that Detective Gomez told Poulos "that burglary detail had a case in which a shotgun of the same model and type including an extra set of barrels had been taken." The proof of that element was that this statement was made to Gomez one week after January 16, but Poulos did nothing. The second requirement stated by the majority, is that the charges must assert the officer received information about such a suspected violation. The charges state that Gomez actually told Poulos a gun like the one he was trying to sell was included in a burglary report at the police station. The proof is that the police records included a description of such a gun which was stolen from the home of Dr. A. Cowles in San Antonio on December 9, 1964. These records were easily accessible to Poulos, a member of the theft detail. The third requirement stated by the majority is that there must be an allegation that this information was not promptly reported by the officer. The charges allege, "Detective Poulos filed no report on the shotgun in question." The proof is that Poulos never did file a report on the gun as a suspected violation.

In my opinion the charges were adequate to assert neglect of duty and also a violation of Rule 16 of the police regulations. We cannot say that the Commission acted arbitrarily in suspending Poulos from the service. I would reverse and render the judgments of the courts below and uphold the order of the Commission.

GRIFFIN, WALKER and NORVELL, JJ., join in this dissent.