ROBERT E. NELMARK, Plaintiff-Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF DE KALB *et al.*, Defendants-Appellees.

Second District   No. 2—86—0851

Opinion filed August 17, 1987.

Gallagher, Fuenty & Klein, of De Kalb (William P. Brady, of counsel), for appellant.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Thomas F. McGuire, of counsel), for appellee Albert Riippi.

Ronald G. Matekaitis, of De Kalb, for other appellees.

JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal by the plaintiff, Robert E. Nelmark, from an order of the circuit court of De Kalb County affirming the decision of the defendant, board of fire and police commissioners of the city of De Kalb (board), discharging the plaintiff from the city's fire department. The plaintiff has raised three issues on appeal which we shall restate as follows: whether it was proper for the board to consider charges other than those occurring on September 12, 1985; whether the findings of the board were against the manifest weight of the evidence; and whether the board's findings were sufficient to justify plaintiff's discharge for "cause."

Prior to the commencement of these proceedings, the plaintiff had been employed as a fireman by the city of De Kalb for 15 years and 7 months. On September 25, Albert Riippi, chief of the city of De Kalb fire department, filed a three-count complaint against the plaintiff with the board. Count I of the complaint alleged that on September 12, 1985, plaintiff had failed to participate in a rappelling drill when directed to do so by a superior officer. Count II alleged that on the same day, plaintiff filed a false accident report. Count III alleged in pertinent part as follows:

> "3. That Respondent (Nelmark) had failed to fully, efficiently and/or effectively perform his duty as a Fireman of the City of De Kalb and to justify the salary/fringe benefits paid him by

the City of De Kalb."

The complaint requested that plaintiff be suspended without pay pending the outcome of the hearing and, further, that plaintiff be discharged if found guilty of one or more of the counts in the complaint.

The hearings on the complaint took place on October 16, November 4, and November 18, 1985. At the hearings, the following facts were adduced. On September 12, 1985, plaintiff and two other firemen responded to an ambulance call on the campus of Northern Illinois University. Upon their arrival at the university, they proceeded to the third floor of Graham Hall, where the patient was located. The firemen placed the patient on a stretcher. The stretcher was then carried down the stairs to the ground floor by the firemen. Plaintiff was in the lead holding the head of the stretcher, and the other two firemen carried the foot of the stretcher. According to plaintiff, as they were descending the stairs, he felt a pain in the area of his lower back and the area of his right hip "like it tore." According to Paul Campbell, one of the other firemen present, he asked if plaintiff was okay, to which plaintiff responded, "Yes, I am fine." Plaintiff explained his reluctance to acknowledge the injury came from the fact that his back had been injured many times, and he had experienced lower back problems due to on-duty injuries, for which he had received workers' compensation benefits. He was also concerned that he might experience some harassment for reporting the injury.

After lunch that day, plaintiff and several other firemen were scheduled to participate in a rappelling drill. The drill consisted of rappelling off a snorkel bucket which was 5 to 10 feet above the fire station's second-story roof, about 50 to 75 feet in the air. According to plaintiff, he spoke to Captain Lubbers, who was supervising the drill, and told him that the drill was unsafe because they were using only one rope, contrary to what the manual provided, and that the rope was old. He informed Captain Lubbers that he would have to be given a direct order to complete the drill. Lubbers ordered him to participate in the drill. Plaintiff then left the drill area and went to see Captain Killingsworth, the second in command. According to plaintiff, he informed Killingsworth that he thought the drill was unsafe and that two ropes should be used instead of one as provided in the manual. Killingsworth replied that if the manual provided that two ropes be used instead of one, then that was how it should be done. Plaintiff then questioned whether there would be a personal liability on Killingsworth's part if plaintiff was forced under threat of disciplinary action to participate in an unsafe drill. Killingsworth indicated that a person who refuses to obey an order would be suspended.

Plaintiff stated that he was not refusing an order and that he would participate in the drill, but that it might result in a lawsuit. With that, plaintiff walked away to get a drink of water. Killingsworth ordered him to come back or face a suspension. Plaintiff returned after obtaining a drink of water and was informed by Killingsworth that he was suspended. Plaintiff was also sent a letter confirming the suspension.

According to Captain Killingsworth, when plaintiff first came to his office, he stated that the drill was unsafe due to the lack of a pad or an air bag. No mention was made of the rope until Killingsworth brought it up in an effort to discover what plaintiff's problem with the drill was. He advised plaintiff that if he wanted a double rope, he could have one. That did not seem to satisfy plaintiff, and Killingsworth continued to inquire as to the real nature of plaintiff's problem with the drill. At that point, plaintiff turned and walked away from Killingsworth's desk. Killingsworth stated that he was not through talking to the plaintiff and that he should return to the desk. However, plaintiff continued to walk away. Killingsworth then gave him a direct order to return to his desk and indicated that he would file charges if plaintiff did not obey his order. Plaintiff responded to go ahead. Killingsworth then suspended plaintiff for the rest of the day. This suspension was not for plaintiff's failure to obey Captain Lubbers' order.

Following his discussion with Captain Killingsworth, plaintiff filled out an accident report indicating that he had injured himself on the ambulance call to Northern Illinois University. He informed Captain Lubbers, who had him transported to Kishwaukee Community Hospital. He was examined in the emergency room by his family physician, Dr. Periakaruppan Ramanathan, who had previously treated plaintiff for lower back problems in January 1985.

Dr. Ramanathan, who specializes in internal medicine and endocrinology, diagnosed plaintiff as suffering from "right groin strain, muscle sprain." He prescribed a muscle relaxant and told the plaintiff not to return to work until he was better. On September 16, 1985, Dr. Ramanathan saw plaintiff in his office. Plaintiff was complaining of groin and back pain. Plaintiff's pelvis was X-rayed but proved negative. The doctor prescribed pain medication and instructed plaintiff not to return to work until September 23, 1985. The doctor also saw plaintiff on September 23, 1985. Plaintiff continued to complain of pain in the right groin and back area. Dr. Ramanathan prescribed anti-inflammation medication and referred plaintiff to two orthopedic surgeons. He also advised plaintiff to be off work until October 9, 1985. Dr. Ramanathan's earlier diagnosis of plaintiff's condition did

not change after plaintiff was seen by the other two doctors. In Dr. Ramanathan's opinion, plaintiff had chronic back problems and that as a result of the incident of September 12, 1985, he had reinjured his back. However, Dr. Ramanathan admitted that he had made his diagnosis at least in part based upon what plaintiff had told him.

With respect to the charges in count III of the complaint, there was testimony that plaintiff did not know where emergency equipment was located or how to use the equipment; that plaintiff was reluctant to enter a fire scene and appeared to be avoiding fire scenes. He lacked knowledge as to where streets where located and at times headed away from fire scenes rather than in the direction of the fire. He appeared to have more trouble with his oxygen mask than the other firemen. Upon inspection, the mask was functioning normally. It was noted that plaintiff would do his job if he were being observed.

In a written order dated December 9, 1985, the board found the plaintiff guilty of the charges in counts I and II. As for count III, the board found that plaintiff had committed the following acts:

"1. Failed to enter a fire scene on Augusta Avenue in the city of De Kalb.

2. Failed to participate in fighting a fire at University Village Apartments in the City of De Kalb.

3. Failed to learn and take a test on the streets in the City of De Kalb and does not know such streets.

4. Failed to climb a ladder and render assistance to other firefighters during a mutual aid fire call in Cortland, Illinois.

5. Was unable to find and operate a rescue tool requested during an ambulance call on Route 38 East of De Kalb."

All of the acts under each count were found to constitute cause for discipline under section 10—2.1—17 of the board of fire and police commissioners act (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17). The board ordered that plaintiff be discharged as of December 9, 1985.

Thereafter, plaintiff filed a complaint in administrative review in the circuit court of De Kalb County. Following the submission of briefs and oral argument, the circuit court found that the board's findings were not against the manifest weight of the evidence and warranted plaintiff's discharge from the fire department. This appeal followed.

■■■ At the outset, we agree with plaintiff that the review of an administrative agency's decision regarding discharge of an employee is a two-step process. The court first determines if the agency's findings are contrary to the manifest weight of the evidence. Secondly, the court must determine if the findings of fact provide a sufficient

basis for the agency's conclusion that cause for discharge does or does not exist. (*Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 626.) However, an agency's decision as to cause for discharge will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service. *Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 626.

■ Plaintiff contends that count III of the complaint failed to apprise him of the charges against him, and as a result, the board improperly allowed evidence of defendant's behavior and actions other than that specified in the complaint to be introduced at the hearings.

Section 10—2.1—17 of the board of fire and police commissioners act provides in pertinent part as follows:

"Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed and discharged except for cause, upon written charges, after an opportunity to be heard in his own defense." (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—17.)

During the hearings, plaintiff objected to the lack of specificity of count III and to any attempt to introduce evidence concerning any acts or omissions to act on the part of the plaintiff other than those spelled out in counts I and II. On the other hand, the defendant argues that plaintiff should have filed a motion for a bill of particulars or a "motion for specificity." Defendant also relies on section 3—111 of the Administrative Review Act which provides in pertinent part as follows:

"Technical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her." Ill. Rev. Stat. 1985, ch. 110, par. 3—111(b).

In *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 196, we stated as follows:

"The charges in these administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions, [citation], although the charge must be sufficiently clear and specific to allow the preparation of a defense."

We find the case of *Kupkowski v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 316, to be instructive on this issue. In that case, plaintiff, a Downers Grove police officer, while driving

his squad car, drove up a grassy embankment and hit a retaining wall, doing substantial damage to his squad car. He moved the vehicle from the scene of the accident and then reported that his vehicle had had an electrical failure. When questioned by his immediate superior, Lieutenant David Rechenmacher, he denied that he had hit anything but admitted he had had an accident. Subsequently, while admitting the accident, he denied both orally to the chief of police and in writing that he knew either the retaining wall or the squad car had been substantially damaged.

Charges were filed against Kupkowski, and following a hearing, he was found guilty of the following violations of the board's rules and regulations: denying, falsely, that he had been involved in a collision; denying, falsely, to his superior officer, the chief of police, and the board that he was unaware that his vehicle was damaged; moving the squad car from the scene of the accident without permission; failing to report property damage; and failing to remain at the scene of an accident. Kupkowski was discharged from the police force. On review of his discharge, he argued that while four of the findings related to charges against him, he was not charged with a violation which would have led to the finding that he lied about the collision. In affirming Kupkowski's discharge, we stated as follows:

"At issue therefore, is whether Kupkowski had effective notice from the written charges that he might be found guilty of making false statements to Rechenmacher, the chief and the board about the damage to his squad car. If the written charges did provide such notice he cannot successfully complain that no one charge was exactly parallel to finding 16(b). ***

We hold that the charges did notify Kupkowski that he might be found guilty of lying to Officer Rechenmacher about the damage to his squad car. Kupkowski argued that he was only charged with lying to Rechenmacher about the collision and not about the damage. Although that is technically correct, Kupkowski was also notified by a different charge that damage to the car would be at issue. Thus, he was charged with both lying to Rechenmacher and with damaging the car. This was sufficient notification that he might be punished for lying to Rechenmacher about the damage.

In contrast there is nothing in any of the charges about lying to either the chief of police or the Board itself. That there may be things that Kupkowski should have, in fact, known is not relevant. They were not alluded to in the charges themselves. As both the State law and the regulations of the board

require that defendant be notified in writing of the charges against him, they cannot be the basis of the dismissal." *Kupkowski v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 316, 321.

We agree with plaintiff that count III of the complaint did not sufficiently notify him as to the charges against him. In *Kupkowski*, although the findings of the board were based on only one incident, this court still concluded that what Kupkowski might know was not relevant. In the case at bar, the testimony in support of count III involved several separate incidents over a substantial period of time, the details of which were not even remotely hinted at in the language of count III. Therefore, we conclude that count III did not sufficiently notify plaintiff of the charges against him and cannot serve as a basis for his dismissal.

■■ Next, plaintiff contends that the board's findings that plaintiff filed a false medical report and disobeyed a direct order were against the manifest weight of the evidence.

It is for the board, not the reviewing court, to judge the credibility of the witnesses and to weigh the evidence. (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 401.) Plaintiff's family physician, Dr. Ramanathan, testified that he examined plaintiff and found him to be suffering a "right groin strain, muscle sprain." However, the doctor also admitted that his diagnosis was based in part upon what plaintiff had told him. X rays of the plaintiff proved negative. Plaintiff never offered his injuries as a reason for his reluctance to participate in the rappelling drill. After returning from the ambulance call at the university where he had allegedly injured himself, plaintiff proceeded to sit and eat lunch with his fellow firemen with no complaint of pain or injury. Although plaintiff suggests that he would not have complained of pain due to his fear of harassment from the other firemen, there is sufficient evidence to support the board's finding that plaintiff filed a false medical report.

■■ We also find that there is sufficient evidence to support the board's finding that plaintiff disobeyed a direct order from Captain Lubbers. While plaintiff argues that even Captain Lubbers admitted that plaintiff never *verbally* refused to take part in the rappelling drill, after receiving a direct order from Lubbers to participate in the drill, plaintiff left the area of the drill without participating in the drill and went into the fire station. Although plaintiff appears to argue that he did not participate in the drill because the drill was unsafe, he never requested the use of a second rope, which, according to Captain Lubbers, he would have been allowed to use.

■ The final determination we must make is whether the findings of the board, discounting the findings made pursuant to count III, were sufficient "cause" for plaintiff's discharge from the city of De Kalb fire department. It is the rule in Illinois that courts may not reverse an administrative agency's finding of "cause" unless the findings are so unrelated to requirements of the service or so trivial as to be unreasonable and arbitrary. *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 399.

Illinois courts have held that disobedience to a proper order given by a superior officer is cause for discharge. (*Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 40.) Moreover, the filing of a false report has also been held to constitute cause for discharge. See *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, (police officer, when questioned by his commanding officer as to whether he refused to answer questions at a Federal grand jury inquiry, stated that the only question he refused to answer was not specific to his duties as a police officer, when in fact he had taken the fifth amendment on all questions).

Finally, the question is not whether or not this court would have imposed the sanction of discharge upon the plaintiff here. As our supreme court in *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 411, stated:

> "The question, though, is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. Nor is it whether this court would conclude in view of the mitigating circumstances suggested by Sutton that a different penalty would be more appropriate. The question is whether, in view of the circumstances presented, this court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service."

In view of the findings of the board as to counts I and II, we can not say that the board acted either unreasonably or arbitrarily when it determined that discharge was the appropriate sanction for plaintiff's actions.

For all of the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.