DANIEL D. KUPKOWSKI, Plaintiff-Appellant, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF DOWNERS GROVE, Defendant-Appellee.

Second District   No. 78-104

Opinion filed April 30, 1979.

Stephen J. Culliton, of Civinelli, Bakalis, Keller & Culliton, of Bloomingdale, for appellant.

Joseph R. Lundy, of Schiff, Hardin & Waite, of Chicago, and Guenther M. Philipp, Village Attorney, and Kenneth T. Kubiesa, Staff Attorney, both of Downers Grove, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This case involves the firing of plaintiff, Daniel Kupkowski, from his position as a police officer of the Village of Downers Grove. The Board of Fire and Police Commissioners of the village discharged Kupkowski on the basis of five findings reached after a hearing. Kupkowski filed suit under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 et seq.), to seek review of the decision of the Board. The trial court found that two of the board's findings were supported by substantial evidence and were therefore valid but that three of the board's findings were

contrary to the manifest weight of the evidence. The matter was remanded to the board for reconsideration of whether Kupkowski should be discharged on the basis of the two violations which had been sustained. On remand the board reaffirmed its earlier order of discharge and the trial court refused to further review the decision. Kupkowski appeals and the board cross-appeals.

On the night of November 18-19, 1976, Kupkowski was on patrol in a squad car. While driving on the private property of Schaub Magnatrol Corporation he accidentally drove 10 to 12 feet up on a grassy embankment and hit a retaining wall made up of two railroad ties. After the collision Kupkowski reversed his auto, backed it down off the embankment and waited approximately one minute to monitor its operation. He then left the scene and drove back onto a public street. A few minutes later the squad car stalled and its radio and electrical systems became inoperative. Kupkowski used his portable radio to call for assistance, stating that the car had suffered an electrical system failure. Within five minutes his immediate superior, Officer David Rechenmacher, arrived at the scene. Rechenmacher repeatedly asked Kupkowski whether he had hit anything and Kupkowski denied that he had. Rechenmacher then traced the trail of antifreeze that had leaked from the punctured radiator of Kupkowski's car to the scene of the accident. At that point Kupkowski admitted that he had indeed had an accident.

Kupkowski's squad car had been extensively damaged. The frame was bent and the left front fender strut was broken, the hood cable was snapped and the radiator had been pushed back into and perforated by the fan. The total cost to the village of repairing the squad car was over $800. The upper railroad tie of the retaining wall had been knocked 2-3 feet out of position. There had been no significant damage to the tie itself or to the embankment. Subsequently Kupkowski, while admitting the accident, denied both orally to the chief of police and in writing that he had knowledge that either the retaining wall or his squad car had been substantially damaged.

On December 30, 1976, the Downers Grove chief of police filed four charges against the defendant. On February 15, 1977, the board began a hearing on the charges, at which Kupkowski, through counsel, had the opportunity to cross-examine all witnesses against him. At the conclusion of the case against Kupkowski his counsel requested that the hearing be recessed in order to permit him to prepare a defense on "questions that I did not directly anticipate." The board permitted Kupkowski's counsel an additional two days to prepare his defense. On February 17, 1977, the hearing reconvened and evidence in defense of Kupkowski was heard.

On March 8, 1977, the board found Kupkowski guilty of committing five violations of the board's rules and regulations:

"16(a) Conduct prejudicial to good order and discipline, in that respondent, having been involved in a collision with squad 119, denied to his superior officer three times that any collision had occurred, knowing said statements to be false.

16(b) Conduct prejudicial to good order and discipline, in that respondent knew at or about the time of said collision that squad 119 had been substantially damaged, but denied to his superior officer, denied to the Chief of Police of the Village and has in the course of this hearing denied under oath to the Board, that he knew of said damage at or about the time of the collision and prior to inspection of the vehicle on Belmont Road approximately 5 to 10 minutes thereafter.

16(c) Neglect of duty, in that respondent failed to report property damage to squad 119, in violation of Section 11d of the Standard Operating Procedures of the Village.

16(d) Neglect of duty, in that respondent moved squad 119 after being involved in said collision and without authorization to do so from the officer writing the accident report, in violation of Section 11b of the Standard Operating Procedures of the Village.

16(e) Violation of an applicable criminal law, in that respondent, having been involved in a collision resulting in damage to other property, failed to remain at the scene of said accident until providing his name, address and registration number of the vehicle he was driving or attaching securely in a conspicuous place on the property struck, written notice thereof, in violation of the applicable statute."

As the defendant points out, four of the findings relate to the counts against the defendant but the defendant was not charged with the violation resulting in finding 16(b).

Counsel for Kupkowski attached an affidavit to his reply brief to the trial court, denying that he "actually knew" he was defending a fifth charge. The board successfully moved to strike the affidavit.

The trial court then affirmed findings 16(a) and (b) but held findings 16(c), (d) and (e) to be invalid. Kupkowski appeals from the trial court's affirmation of findings 16(a) and (b) as an adequate basis for his discharge. He also appeals from the order striking the affidavit. The board cross-appeals the invalidation of findings 16(c), (d) and (e).

Kupkowski contends that: (1) with regard to finding 16(b), he did not receive notice of the charges in accordance with various constitutional, statutory and administrative protections relating to notice; (2) the trial

court erred in striking the affidavit of his counsel with regard to whether he had actual knowledge of the violations found in finding 16(b); (3) the valid findings of the board do not constitute cause for discharge from the police department but only for the imposition of some lesser penalty.

Kupkowski's first two arguments focus on the fact that finding 16(b) is not directly tied to any specific written charge. Kupkowski cites both Illinois statute and procedural rules of the board which require that written charges be filed with the board specifying the offense of which the officer is accused. (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17; Rules and Regulations of the Board of Fire and Police Commissioners of the Village of Downers Grove, §5.2.) The board agrees that this is the rule, but contends that Kupkowski was in fact effectively notified of the matters covered by 16(b) in that the combination of the four charges plus the testimony at the hearing gave him sufficient notice that he would be charged with lying to Officer Rechenmacher, the chief of police and the board about his knowledge of the damage to the squad car.

■■ As we noted in *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 196, 198 N.E.2d 705, 707:

> "The charges in these administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions [citation], although the charge must be sufficiently clear and specific to allow the preparation of a defense. [Citation.] Moreover, as the language of the statute itself implies, 'The removal can only be for cause set forth in (the) written charges against the officer * * *'."

Sudduth was charged, *inter alia*, with attempting "to commit suicide by taking an overdose of Seconal tablets." The evidence introduced at the hearing supported the allegation that Sudduth had taken sleeping tablets but did not support a charge that he had attempted to commit suicide and a finding, made by the board, was that he "administered to himself without a prescription a habit forming hypnotic drug called Seconal, as a result of which he had to be hospitalized and physically restrained because of delirium induced by alcohol and drugs." We dealt with this difference between charge and finding as follows:

> "That there is a variance between a charge that Appellant attempted to commit *suicide* by an overdose of seconal, and the finding that put himself in a hospital in a violent state of delirium due to seconal and alcohol, is obvious. The question we have to answer, however, is not whether a technical distinction exists, but whether the Appellant has been denied substantial justice.
>
> Faced with a charge that he attempted suicide by means of seconal, Appellant was obviously on notice that he was going to be

confronted with evidence that he took seconal, and that it had ill effects upon him." (48 Ill. App. 2d 194, 205, 198 N.E.2d 705, 711.)

Directly in agreement with our decision in *Sudduth* is *Hayes v. Civil Service Com.* (1952), 348 Ill. App. 146, 150-51, 108 N.E.2d 505, 507, where the court held:

> "* * * there was no necessity of a specific charge of the violation * * * since the charges contained allegations of facts which were sufficient to apprise plaintiff of all the matters alleged against him."

At issue, therefore, is whether Kupkowski had effective notice from the written charges that he might be found guilty of making false statements to Rechenmacher, the chief and the board about the damage to his squad car. If the written charges did provide such notice he cannot successfully complain that no one charge was exactly parallel to finding 16(b). The cases cited by Kupkowski do not contradict this rule. In *Wierenga v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 270, 352 N.E.2d 322, the defendant officer was not given notice sufficient to defend himself on an alleged violation of the section of the municipal code. The facts in *Wierenga* were not in issue, but Wierenga was not given an opportunity to research and argue the legal question of whether he was guilty of a particular statutory offense. Another case relied on by Kupkowski, *Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 334 N.E.2d 325, involved a situation where there were no written charges filed at all.

■ We hold that the charges did notify Kupkowski that he might be found guilty of lying to Officer Rechenmacher about the damage to his squad car. Kupkowski argues that he was only charged with lying to Rechenmacher about the collision and not about the damage. Although this is technically correct, Kupkowski was also notified by a different charge that damage to the car would be at issue. Thus, he was charged with both lying to Rechenmacher and with damaging the car. This was sufficient notification that he might be punished for lying to Rechenmacher about the damage.

■ In contrast, there is nothing in any of the charges about lying to either the chief of police or to the Board itself. That these may be things that Kupkowski should have, in fact, known is not relevant. They were not alluded to in the charges themselves. As both the State law and the regulations of the board require that defendant be notified in writing of the charges against him, they cannot be the basis of the dismissal.

■ The board points out that it was factually impossible to charge Kupkowski with lying to the board at the hearing before the hearing took

place and contends that Kupkowski's attempt to invalidate that particular aspect of finding 16(b) is "obviously frivolous." Although the board is correct in that the charge could not be brought before the event, Kupkowski's contention is far from frivolous. Our system of law is designed to encourage free and open testimony at judicial and quasijudicial proceedings. Crimes or other violations committed at such proceedings can usually only be punished by a return to the beginning of the entire criminal justice process. The most analogous example is of a criminal defendant who takes the stand and testifies that he did not in fact do the act with which he is charged. If the judge or jury finds the defendant guilty it is tantamount to a finding that he has lied. Nonetheless, the judge cannot sentence him for perjury as well as for the offense with which he was originally charged. New perjury charges would have to be brought. Although due process before an administrative body may not require the same procedures required in our courts, the fact that both the State statute and the board's rules mention written charges eliminates any potential inherent administrative power to make findings without charges.

■ Kupkowski's second contention is that, when confronted with the board's argument that he had actual notice of the allegation that he had lied about knowing about damage to the squad car, he should have been allowed to introduce an affidavit of his attorney in rebuttal. This argument is totally without merit. Since the affidavit was not part of the administrative record, Kupkowski had no right to have the assertions of such document heard by the court. Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274) provides that:

> "The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court."

Furthermore, Kupkowski's counsel had a clear opportunity to introduce his affidavit at the Board's hearing to consider Kupkowski's petition for a rehearing. If he had chosen to do so, the affidavit would have automatically become part of the administrative record before the trial court.

We now turn to the board's counterappeal that the trial court's ruling that findings 16(c), (d) and (e) were invalid was erroneous. In reviewing a decision of an administrative agency, such as the board in the instant case, the findings of the board on questions of fact are to be held prima facie true. (Ill. Rev. Stat. 1975, ch. 110, par. 274.) Such finding may not be reversed unless it is against the manifest weight of the evidence. (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342

N.E.2d 298.) An administrative finding may not be adjudged to be against the manifest weight of the evidence unless, from the record, it appears that an opposite conclusion is clearly evident. *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.

■■ The board contends that the trial court erred in overruling findings 16(c) and (d) because those findings were supported by "substantial, uncontroverted evidence in the record." The Standard Operating Procedures of the board provide that even slight damage to vehicles should be reported promptly and that drivers are not to move vehicles until told to do so by the officer writing the accident report. Kupkowski does not deny that he failed to report the damage to the squad car and that he moved it before being told to do so by any other officer, but argues that he was not bound by these rules because of the manner in which they were communicated to officers of the department. The record shows that the rules of the Standard Operating Procedures were read to Kupkowski and other police officers in a training session two months before the accident. Although Kupkowski alleges that this is not enough to hold him to the letter of such rules, it seems clear that he was notified of these rules and did violate them. Therefore, we conclude that the board's decision was not against the manifest weight of the evidence. It is no more necessary for the board to prove an actual subjective awareness of the rule than it is for the State to show subjective awareness of the law by a defendant in a criminal proceeding. We need not rule whether such a violation alone would have been grounds for dismissal as there is no evidence to indicate that Kupkowski would have been dismissed or discharged if his only misconduct had been a violation of the board's Standard Operating Procedures. On the contrary, the board discharged Kupkowski even after the court had remanded the case with instructions that it could not rely upon 16(c) and (d) in determining the appropriate penalty.

■■ The board further contends that the trial court erred in overruling finding 16(e), which alleged that Kupkowski failed to notify the owner of the damaged property and failed to notify the nearest officer as required by law (Ill. Rev. Stat. 1975, ch. 95½, par. 11—404). The trial court sustained the board's factual findings that Kupkowski knew of the damage to the wall and left the scene, but overturned its conclusion on the basis that the damage caused by Kupkowski was insufficient for section 11—404 purposes. Kupkowski emphasizes that there was no damage done to the railroad tie itself or to the grassy embankment but ignores the fact that he did dislodge and displace the tie from its position as part of the retaining wall. Although this displacement might be characterized as minor damage, it did require Schaub Magnatrol to take steps to fix it. The statute makes no distinction between minor damage and major damage,

and we will not say that it was legally incorrect for the board to interpret the statute as written. We therefore affirm the board's decision that displacement of the railroad tie triggered the requirements of section 11—404. The question of extent of damage should properly go only to the degree of punishment; whether this particular violation of section 11—404 would, standing alone, be a sufficient basis for dismissal is not the question before us. The board, as they did with findings 16(c) and (d), decided to dismiss Kupkowski despite the reversal of finding 16(e) by the trial court. Hence, we reverse the trial court and affirm the board's findings with regard to findings 16(c), (d) and (e).

Having determined that the board's counterappeal is meritorious, it may not be necessary for us to discuss in detail Kupkowski's contention that finding 16(a) alone is not a sufficient basis for permanent dismissal from the police force. Nonetheless, we have decided to comment on this contention.

At issue is whether lying to a superior officer justified the admittedly severe penalty of dismissal. There are cases on both sides of this question; some holding that lying to a superior officer is not sufficient grounds for dismissal (*Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049; *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511), and some holding that it is (*Noro v. Police Board* (1977), 47 Ill. App. 3d 872, 365 N.E.2d 419; and *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, 339 N.E.2d 504). The key factor is the subject matter of the falsehood, more specifically, how it directly relates to a policeman's duties to the public.

In *Humbles* an officer told his superior that he was going to the county courthouse to testify in a traffic case where he was actually going on personal business relating to his wife's divorce suit. In *Kreiser* an officer falsely denied that he had been driving his personal car on the previous day while he was supposed to be on duty. These falsehoods were held not to justify dismissal, in our opinion, because they did not relate directly to the officer's public duties but only to matters of internal police administration. Both *Noro* and *Thanasouras* involved officers telling their superiors they had answered the questions of grand juries investigating their official activities when, in fact, they had relied on the fifth amendment and not answered questions. The dismissals of the officers were held to be justified in these circumstances.

■■ The instant case does not involve a lie about attending to personal business while on duty but a lie directly connected to an officer's duty to the public, in that sense it is closer to the facts of *Noro* and *Thanasouras* than to *Humbles* and *Kreiser*. An officer on duty in a squad car has a duty to obey the laws and to avoid negligently damaging either public or

private property, and a lie relating to these duties is, in our opinion, grounds for dismissal.

We therefore find that the first finding of the board was substantiated and, as the trial court found, was not against the manifest weight of the evidence. That part of finding 16(b) that relates to Officer Rechenmacher is proper but that part of 16(b) that relates to the defendant's alleged lies to the chief of police and to the board is not a valid determination of charges against the defendant. We further find that the trial court erred in holding that the remaining three findings, 16(c), (d) and (e), of the board were against the manifest weight of the evidence.

In summation, we find that the board's error with regard to part of finding 16(b) was insignificant in light of the other proper findings and that the dismissal of Kupkowski by the board should be affirmed.

Affirmed in part and reversed in part.

LINDBERG and NASH, JJ., concur.