OLIVER CHRISTENSON, Plaintiff-Appellee, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF OAK FOREST *et al.,* Defendants-Appellants.

First District (1st Division)   No. 79-652

Opinion filed April 7, 1980.—Rehearing denied May 12, 1980.

Thomas F. McGuire, of Des Plaines, for appellants.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Oliver Christenson, was discharged from his position as a captain in the Oak Forest Police Department (department) after a hearing before the Board of Fire and Police Commissioners of the City of Oak Forest (board). Christenson filed a complaint for administrative review against the board and Alvin E. Lexow, as department police chief, in the circuit court of Cook County. (Ill. Rev. Stat. 1977, ch. 110, pars. 264-279.) The circuit court reversed the board's order as to the penalty of discharge and remanded the cause. Defendants appeal seeking reinstatement of the board's ruling.

The charges brought against Christenson alleged, among other things, that (a) on June 5, 1977, Christenson had driven an Oak Forest police vehicle outside the city limits for nonofficial purposes while on duty and while accompanied by members of his family, and (b) on June 22, 1977, Christenson had lied to the chief of police and, on August 26, 1977, to a polygraph operator acting for the chief concerning the improper use of the police vehicle.

The board adjudged Christenson guilty of these charges and found:

(1) On June 5, 1977, Captain Christenson was on duty and in uniform. Without authority he used a police vehicle to transport himself and members of his family to Balmoral Race Track in Crete, Illinois, for personal reasons concerning caring for his horses. Balmoral is located about 15 miles from Oak Forest. Christenson was outside of effective radio communication with the department while at Balmoral.

(2) On June 22, 1977, Christenson gave Chief Lexow a written explanation of this incident knowing such statement was false.

(3) On August 26, 1977, Christenson gave a true statement concerning the incident to a polygraphist. However, in pretest questioning, he omitted the fact that he had been to the track to attend to his horses earlier on June 5, 1977, while off duty. The board found this omission was intended to mislead the polygraphist and the chief in the investigation.

On January 23, 1979, the circuit court entered an order:

(1) sustaining the board's findings as to guilt;

(2) reversing the board's decision to terminate Christenson as contrary to the manifest weight of the evidence; and

(3) remanding the cause to the board for the imposition of any punishment other than discharge or suspension greater than 120 days.

On February 5, 1979, the circuit court stayed its order pending appeal. On February 20, 1979, defendants appealed from that portion of the circuit court order reversing Christenson's termination as being against the manifest weight of the evidence. Christenson did not cross-appeal.

Accordingly, the question of whether the board's factual findings were contrary to the manifest weight of the evidence is not before us. The sole issue is whether these findings constitute sufficient cause to discharge Christenson.

A more detailed recitation of the facts surrounding the incident is necessary to resolve this issue.

On June 5, 1977, at about noon, Mrs. Wanda Christenson received a phone call from the Christensons' horse trainer. He reported that something was wrong with their horses, particularly concerning their

eyes. Christenson, who was off duty, returned from the store and received the trainer's message. He called the trainer back and was told that his horses had been sprayed and injured. Christenson, accompanied by his wife and two children, drove the family van to Balmoral Race Track to attend to the horses.

They arrived at the track at about 1:30 p.m. and discovered that one horse was bleeding from underneath the throat. All the horses had a yellow substance all over their bodies and their eyes were closed. Christenson discovered that the horses had been sprayed with a chemical fire extinguisher substance. He bathed the horses to eliminate the substance and discovered one horse's eyes were swollen shut. At this point, his daughter unsuccessfully attempted to contact a veterinarian.

The family returned home so that Christenson could begin his shift as watch commander. Chief Lexow was not on duty, so Christenson was the senior officer in command. He began his shift at 3:30 p.m. and around 6 p.m. told Officer Holba that he would be out of town on an emergency, that he had to see an eye doctor, and that he was borrowing a squad car. He appointed Holba watch commander until his return.

Christenson then proceeded to his residence, picked up his wife and children, and returned to the track. According to Christenson, he used a squad car for the trip because of mechanical problems with his van, and to assure his speedy response to any emergency calls. They arrived at the track at about 6:45 p.m., where Christenson administered medication prescribed by a veterinarian to the horses' eyes. Christenson also discovered an empty fire extinguisher buried under manure.

Christenson took the extinguisher to the station to examine for fingerprints, returning between 8 and 8:15 p.m. He checked the log for that night and noticed that there had been no emergencies. Christenson claimed that he maintained radio contact with the station while out of town, could hear transmissions, but received no calls. He stayed about an hour past the end of his shift to assure everything was all right.

On June 22, 1977, Christenson submitted answers to written questions propounded by Chief Lexow pursuant to an internal investigation of the incident. The investigation was initiated because two officers had observed Christenson and his family in a squad car heading southbound on I-57 near Route 30, while Christenson was on duty. Christenson indicated that he was on I-57 near Route 30 because he was transporting his wife and children to her car that had broken down. He was able to get her car operating and followed her home in the squad car.

On August 26, 1977, Christenson took a polygraph test in connection with the incident. During a pretest interview, he admitted the falsity of his June 22 statements. He related an accurate account of his second trip to the track substantially as recounted above. In the opinion of the examiner,

the truthfulness of this account was verified by the polygraph examination. However, Christenson did not tell the examiner about his first trip to Balmoral. This gave the impression that he first became aware of the emergency while he was on duty.

Finally, Lieutenant William Busse testified that as part of the internal investigation he drove to Balmoral to determine whether radio communication was possible. Busse was unable to raise the department on his radio. Balmoral was 21 miles from the city. However, Busse had been able to receive, but could not effectively send, radio communications from Joliet, which is 23 or 24 miles from the city. Busse also stated that he had previously transmitted over 23 miles and that transmission distance depended upon the atmospheric conditions.

■■■ Under these facts, we find no just cause for discharge. In Illinois, a public employee can only be discharged for "cause." (*Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; Ill. Rev. Stat. 1977, ch. 24, par. 10—1—18.) Cause has been defined as:

> "* * * [S]ome substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d·436, 441, 352 N.E.2d 389, *aff'd and remanded* (1977), 69 Ill. 2d 27, 30, 370 N.E.2d 511.)

Generally, whether a charge is sufficient cause for discharge is for the board to determine. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560; *Joyce v. Board of Education* (1945), 325 Ill. App. 543, 60 N.E.2d 431, *cert. denied* (1946), 327 U.S. 786, 90 L. Ed. 1013, 66 S. Ct. 702.) However, unlike agency findings of fact, determinations of cause are not *prima facie* true and correct and are subject to judicial review. (*Caliendo v. Goodrich*.) It remains the function of reviewing courts to determine if the charges brought are so trivial as to be unreasonable or arbitrary, if the agency acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522; *Parkhill v. Illinois Civil Service Com.* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254.

Christenson's employment history with the department also has bearing upon the issue of cause. (*Kreiser v. Police Board*; *Fox v. Civil Service Com.*) The fact that Christenson served the department for 23 years and as a captain for 9 years without previous discipline infractions militates against his discharge. Defendants' contention that Christenson's work record serves as a factor in aggravation is supported by neither law nor reason.

■■ Christenson concedes that his use of a police vehicle for a personal errand was technically in violation of department rules. However, this violation is mitigated by several factors. Christenson was confronted with what he believed to be a critical emergency situation concerning criminal damage to his valuable horses. Christenson put another officer in charge rather than abandon his responsibilities. He also attempted to remain in radio contact with the department, although the range of his radio equipment may have precluded effective and consistent contact. His presence in the city was not compelled by any emergency. Finally, he worked an hour after his shift to assure things ran smoothly. Hindsight might reveal that the wiser course would have been delegation of his horses' treatment rather than his responsibilities as a police officer and captain. Nonetheless, under these circumstances, attending to personal business while on duty is not such substantial misconduct as to warrant the ultimate sanction of discharge. See *Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049.

■■ We next turn to the question of whether Christenson's added misconduct of lying to a superior officer justified dismissal. We are guided by *Kupkowski v. Board of Fire & Police Commissioners* (1979), 71 Ill. App. 3d 316, 389 N.E.2d 219. There, an officer on duty in a squad car negligently damaged property and lied to a superior officer about the accident. The appellate court noted (71 Ill. App. 3d 316, 324-25) that:

> "* * * There are cases on both sides of this question; some holding that lying to a superior officer is not sufficient grounds for dismissal (*Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049; *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511), and some holding that it is (*Noro v. Police Board* (1977), 47 Ill. App. 3d 872, 365 N.E.2d 419; and *Thanasouras v. Police Board* (1975), 33 Ill. App. 3d 1012, 339 N.E.2d 504). The key factor is the subject matter of the falsehood, more specifically, how it directly relates to a policeman's duties to the public.
>
> In *Humbles* an officer told his superior that he was going to the county courthouse to testify in a traffic case where he was actually going on personal business relating to his wife's divorce suit. In *Kreiser* an officer falsely denied that he had been driving his personal car on the previous day while he was supposed to be on duty. These falsehoods were held not to justify dismissal, in our opinion, because they did not relate directly to the officer's public duties but only to matters of internal police administration. Both *Noro* and *Thanasouras* involved officers telling their superiors they had answered the questions of grand juries investigating their official activities when, in fact, they had relied on the fifth

amendment and not answered questions. The dismissals of the officers were held to be justified in these circumstances.

The instant case does not involve a lie about attending to personal business while on duty but a lie directly connected to an officer's duty to the public, in that sense it is closer to the facts of *Noro* and *Thanasouras* than to *Humbles* and *Kreiser*. An officer on duty in a squad car has a duty to obey the laws and to avoid negligently damaging either public or private property, and a lie relating to these duties is, in our opinion, grounds for dismissal." (See also *Mihalopoulos v. Board of Fire & Police Commissioners* (1978), 60 Ill. App. 3d 590, 376 N.E.2d 1105, as an example of dishonesty in connection with official functions—lying to an IBI agent during an official investigation.) Christenson lied about attending to personal business while on duty. Accordingly, this case is analogous to *Humbles* and *Kreiser*.

Defendants attempt to characterize Christenson's misconduct as repeated and premeditated lying. They contend that he lied (1) on June 22, 1977, when he gave the chief his written statements; (2) on August 26, 1977, when he gave a statement to the polygraph examiner; and (3) on August 29, 1977, when he notarized his August 26, 1977, statement and attested to its veracity.

In our view, Christenson's dishonesty involved a single incident. In his statement to the polygraph examiner, Christenson neglected to mention his first off-duty visit to the racetrack. However, he was not specifically questioned about that timespan. Rather, his statement concerned the period he was absent from duty. Accordingly, we view Christenson's statements to the polygraph examiner as a renouncement of his earlier subterfuge and essentially truthful in nature. Results of the polygraph examination support this view.

For all of the aforementioned reasons, we affirm the circuit court's determination that Christenson's misconduct was not so serious as to warrant the most severe sanction of discharge. We reverse, however, that portion of its order remanding the cause to the board with directions to reconsider any sanction it deems appropriate "other than discharge or suspension for a period of more than 120 days." Adhering to the supreme court's holding in *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 31, 370 N.E.2d 511, that the proper disposition to make here is "to remand the matter to the Board for consideration of what action, if any, should be taken," we remand the cause to the board for further proceedings consistent with the views here expressed.

Affirmed in part, reversed in part and remanded with directions.

McGLOON and CAMPBELL, JJ., concur.