**Lester HERSHINOW,**
**Plaintiff-Appellant,**

v.

**M.F. BONAMARTE, Jr., Chief of Police of the City of Highland Park, Illinois, and Larry Rice, City Manager of the City of Highland Park, Illinois, Defendants-Appellees.**

**Nos. 83–2470, 83–3165.**

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1984.

Decided May 18, 1984.

Stanley M. Jakala, Berwyn, Ill., for plaintiff-appellant.

Jack M. Siegel, Jack M. Siegel & Assoc., Chicago, Ill., for defendants-appellees.

Before BAUER, WOOD, and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff, a police officer in Highland Park, Illinois, sued the police chief and city manager under 42 U.S.C. § 1983, complaining that his three-day suspension without pay violated his rights under the Fourteenth Amendment. The district court dismissed the complaint on the defendants' motion for summary judgment, and the plaintiff has appealed (No. 83-2470).

The plaintiff stopped Debbie Oggoian for speeding, and while he was writing out her ticket she said to him, "Jewish ladies should be receiving tickets for holding up traffic while dropping their kids off," and, "All they have in this town are Jewish bitches." The plaintiff said, "I wish you wouldn't say any more; I happen to be Jewish." According to him, she replied: "I will get your Jewish wife." He told her he was arresting her for threatening his wife, and then either pulled her or helped her out of the car. But she told him she hadn't meant to threaten his wife, and he released her and she went on her way. She complained about the incident to the police department, which suspended the plaintiff for three days without pay for unprofessional conduct in allowing his personal feelings to influence his behavior toward a citizen.

■ With the merits of Officer Hershinow's dispute with Miss Oggoian we have, of course, nothing to do; nor is it our business whether the sanction meted out by the police department was appropriate. The only question for us is whether the defendants violated Hershinow's constitutional rights. The main argument he makes is that the suspension deprived him of his liberty of occupation, a part of the

liberty protected by the due process clause of the Fourteenth Amendment, by stigmatizing him as unprofessional. But this argument misconceives the nature of that liberty, as interpreted in *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam), and the other cases that the plaintiff relies on. Those are cases where, as we explained recently in *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136 (7th Cir.1984), a public employee was fired for publicly announced reasons that so impugned his moral character as to make it unlikely that he could obtain an equivalent job with some other employer. Such cases have no application where the employee is not fired. Hershinow cannot complain that he has been made unemployable; he remains employed, and in a job that has considerable tenure rights attached to it. See *Thomas v. Police Bd.*, 90 Ill.App.3d 1101, 1105, 46 Ill. Dec. 289, 292–293, 414 N.E.2d 11, 14–15 (1980); *Christenson v. Board of Fire & Police Comm'rs*, 83 Ill.App.3d 472, 476, 38 Ill.Dec. 915, 917, 404 N.E.2d 339, 341 (1980). This already puts him ahead of most American workers, who are employees at will. It is true, as he argues, that a police officer who is suspended, however briefly, on the ground of unprofessional conduct has a black mark against him that may impede his advancement and reduce his chances of finding a good job elsewhere. But if that were a basis for claiming damages for a deprivation of liberty, every reprimand that became part of a public employee's file would be a potential basis for a section 1983 case, and the federal courts would become the grievance machinery for public-sector employees.

■ Hershinow also argues that the suspension was a punishment for the free exercise of his religion and therefore infringed his rights under the First Amendment. There is no suggestion that if Miss Oggoian's abusive remarks had concerned some other, nonreligious group to which Hershinow might belong—redheads, for example, or people with flat feet or pot bellies—and he had reacted as he did, the police department would not have disciplined him with equal severity. So he cannot complain that he is a victim of discrimination on account of his religion. There are, it is true, cases which hold that even when a regulation is secular in its purpose and principal effects, and is enforced evenhandedly against religious and nonreligious people alike, the religious may be able to claim exemption from it by virtue of the First Amendment. See, e.g., *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Robinson v. Price*, 615 F.2d 1097 (5th Cir.1980). But to succeed in their claim they must show that the regulation burdens—some cases say "unduly burdens"—the free exercise of religion. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Menora v. Illinois High School Ass'n*, 683 F.2d 1030, 1033 (7th Cir.1982). This test is not satisfied here. The effect on the free exercise of religion of not allowing a policeman to stand up for his religion (if that is what Hershinow was doing—Jews are an ethnic as well as religious group) in an official encounter with a citizen is slight, and is easily offset by the public interest in requiring policemen to suppress their personal feelings in such encounters so as not to provoke the type of completely unnecessary altercation and arrest that occurred here. Cf. *Palmer v. Board of Educ.*, 603 F.2d 1271, 1274 (7th Cir.1979).

■ Hershinow's final claim, that he was denied the equal protection of the laws, is presented in so perfunctory and underdeveloped a manner in his brief that we shall not consider it. See *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983) (dictum).

■ No. 83–3165 is Hershinow's appeal from a determination by the district court that the defendants are entitled to an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. Although the fact that the district court has not yet determined the amount of the award would not bar the

appeal, *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 826–27 (7th Cir.1984), one reason why it would not is that allowing an immediate appeal, before the district court has fixed the amount of the award, usually allows the fee appeal to be consolidated and decided with the appeal on the merits. In this case, however, the timing of the two appeals prevented consolidation, and the question therefore is whether we should set the fee appeal for argument knowing that we may later have to decide an appeal dealing with the amount of the actual award. We think it better to take no action on the fee appeal until the district court fixes the amount of the award, and then to consolidate the two appeals. We remind the district judge that no award of attorney's fees to a civil rights defendant is proper unless the suit was frivolous. See *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983). He may therefore want to reexamine his determination to award fees, before he sets the amount. To facilitate that reexamination we hereby DISMISS the appeal in No. 83–3165 without prejudice to the plaintiff's refiling it should the district judge make an actual award of fees to the defendants. For the reasons stated earlier, the judgment in No. 83–2470 is AFFIRMED.