RUSSELL STYCK, Plaintiff-Appellee, v. IROQUOIS COUNTY SHER-
IFF'S MERIT COMMISSION *et al.*, Defendants-Appellants.

Third District   No. 3—93—0014

Opinion filed November 30, 1993.—Rehearing denied January 11, 1994.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Thomas F. McGuire, of counsel), for appellant Joseph V. Mathy.

Gordon L. Lustfeldt, State's Attorney, of Watseka (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant Iroquois County Sheriff's Merit Commission.

Boyer & Thompson, Ltd., of Watseka (Ronald E. Boyer, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

On July 18, 1990, the sheriff of Iroquois County, Joseph Mathy, filed charges with the defendant, Iroquois County Sheriff's Merit Commission (Commission), alleging that the plaintiff, Russell Styck, engaged in behavior that violated the "cause" clause of section 3—8014 of the Counties Code (Ill. Rev. Stat. 1989, ch. 34, par. 3—8014). The plaintiff entered a plea of not guilty, and the Commission conducted an administrative hearing. On August 22, 1990, the Commission issued its "Findings and Order" in which it found the plaintiff guilty of the charges and discharged him from his employment. The plaintiff sought administrative review in the circuit court. That court reversed both the finding of guilty and the plaintiff's discharge. The defendants appeal, and we reverse the decision of the circuit court with respect to the finding of guilt, but remand the cause to the Commission for imposition of a more appropriate penalty.

The sheriff's complaint was in four counts. Count I charged the plaintiff with speeding in the City of Sheldon on June 26, 1990. Count II charged him with making false statements during an administrative

interview regarding the speeding incident. Count III charged him with using loud, abusive and/or vulgar language on July 10, 1990, at 291 East Grove in Sheldon, causing the Sheldon police to respond to that location. Count IV alleged that on November 8, 1989, the plaintiff urged his ex-wife to lie about certain events that occurred on November 5, 1989, and for which the plaintiff received a 45-day suspension without pay.

The following evidence was adduced at the administrative hearing. John Kidwell, a part-time officer for the Sheldon police department, testified that on June 29, 1990, he stopped the plaintiff for speeding. Kidwell clocked the plaintiff traveling 47 miles per hour in a 20-mile-per-hour zone. The plaintiff was off duty and was in his personal vehicle at the time. When the plaintiff opened his billfold to show Kidwell his driver's license, Kidwell noticed the plaintiff's police badge. When Kidwell told the plaintiff how fast he was going, the plaintiff responded, "No way." Kidwell offered to show the plaintiff the radar, but the plaintiff declined. The plaintiff told Kidwell that he had just had it out with his old lady, had a few beers, and was on his way home. Kidwell also recalled the plaintiff saying that he had been talking to "Joe." The plaintiff told Kidwell to go ahead and give him a ticket, but Kidwell told him to go on home. The plaintiff had not attempted to use his position as a police officer for any favors.

Paul Jones, a retired inspector for the Illinois Department of Agriculture, testified that he lives next door to the plaintiff's ex-father-in-law, Kenneth Gaffield. Jones testified that on July 10, 1990, he was sitting on his back porch with his wife and two grandchildren. The plaintiff was in his personal vehicle, parked on the street in front of Gaffield's house at the time, and Jones could hear hollering and foul language. Jones assumed the plaintiff was talking to his ex-wife, Priscilla, because he had heard them arguing this way before. Jones remembered hearing the word "bitch" and the phrase "fuck off." He testified that he was certain that it was the plaintiff who was using this language. He also heard the plaintiff's daughter, Elaina, say she was going to kill herself. Jones went to see what was going on. When he got to the front of his house, he saw Elaina run into the Gaffields' home. Jones called the State Police, and he was advised to contact Paul DeWitt of the Sheldon police. When Officer DeWitt arrived, Jones told him that he would sign a complaint against the plaintiff. The plaintiff told Jones that the matter was "none of [Jones'] damn business." Jones then went back inside his house and tried to get the phone number of a member of the merit commission. When Jones went back outside, he told DeWitt that if the plaintiff would leave and

quit irritating everybody, he would change his mind about signing the complaint.

Kenneth Gaffield also testified regarding the events of July 10, 1990. Gaffield's stepdaughter, Priscilla, was staying with him at the time. The plaintiff's and Priscilla's two children, Dusty and Elaina, were also there that evening. Gaffield remembered that Priscilla had been arguing with the plaintiff on the phone and that subsequently the plaintiff came over to the house. The children went outside to talk to the plaintiff, but then ran back inside saying they did not want to go with him. Gaffield then told the plaintiff that he was not going to allow him to cause any more disturbances and went back inside to call the police. Gaffield heard the plaintiff hollering and calling someone a "lying son of a bitch." When DeWitt arrived, Gaffield told him that things had calmed down and that he would take care of it. DeWitt left, and the plaintiff's children came back outside. Elaina then ran back inside saying she was going to kill herself. Gaffield told the plaintiff that Elaina did not want to go with him, but the plaintiff insisted that she do so. Gaffield called DeWitt again, and when DeWitt arrived, Gaffield told him that he would sign a complaint against the plaintiff. The plaintiff eventually agreed to let Elaina remain at the Gaffields'. He left at around 10 p.m. On cross-examination, Gaffield admitted that he was aware that the plaintiff had legal custody of the children.

Paul DeWitt, the chief of police of Sheldon, testified that at around 8:45 p.m. on July 10, 1990, he received a dispatch to go to the Gaffields' house. He then received a notice to disregard the call so he went home. He lived approximately 100 yards from the Gaffield residence. When he got out of his car, he heard the plaintiff yell that someone was a lying son of a bitch. DeWitt then received another dispatch to go to the Gaffields' house, so he got into his car and drove over there. DeWitt asked the plaintiff what he was yelling about, and the plaintiff explained that he had custody of the kids and that he was there to pick them up. He said that his wife had changed her mind about having the kids for the weekend, so he had come to get them. DeWitt went inside and talked to Gaffield and the plaintiff's daughter. Elaina said that she did not want to go with the plaintiff because she was afraid of him. DeWitt explained to the plaintiff that Elaina did not want to go with him, but the plaintiff insisted. DeWitt then contacted the plaintiff's attorney to ascertain that the plaintiff did indeed have custody. DeWitt again asked Elaina if she would go with her father, but she said that she was afraid of him when he was drinking. DeWitt again went outside to talk to the plaintiff, and, at this time,

Jones walked up and said that he would like to sign a complaint. Jones said that he had pull in Springfield and that he would take care of the situation if DeWitt would not. DeWitt let the plaintiff go home and did not arrest anyone.

The plaintiff's ex-wife, Priscilla, testified that the plaintiff instructed her to lie in a written statement given to the sheriff during a previous disciplinary proceeding. Those charges stemmed from a fight between the plaintiff and Roy Pfingsten, the plaintiff's former brother-in-law. The fight occurred on November 5, 1989, in Watseka. According to Priscilla, she lied in a written statement given to the sheriff on November 8. She lied when she said that the plaintiff did not start the fight and did not intend to start a fight with Roy. The plaintiff told Priscilla to stick to the story that he and his sisters, Cindy and Audrey, had discussed in the kitchen of the plaintiff's house in the presence of Priscilla. Priscilla stated that she lied because she was afraid of the plaintiff. At the time, Priscilla was divorced from the plaintiff but was living with him. Priscilla admitted on cross-examination that she wanted to regain custody of her daughter.

The plaintiff testified that, on the day he was stopped for speeding, he had just come from picking up his son at Christian camp. He did not realize that he was speeding when he went through Sheldon. According to the plaintiff, Kidwell told him that he was going 43 miles per hour. The plaintiff denied saying "no way" to Kidwell when told how fast he was going. He testified that he told Kidwell that he was taking his son to his ex-wife's place because she was supposed to have him for the weekend. The plaintiff did not tell Kidwell that he had just been arguing with his ex-wife or that he had been talking to "Joe." The plaintiff denied that he had been drinking. He also denied that Kidwell told him to go on home.

The plaintiff further testified regarding the events of July 10, 1990. He stated that he went to the Gaffield residence at 8:45 p.m. to pick up his children. The children were out in the yard when he arrived. He told them to get their stuff and that they were going home. Dustin went inside to get his stuff, but Elaina walked toward the jeep and wanted to know why she was going home. The plaintiff told Elaina that he did not want her around her mother until after the next court hearing because her mother was lying to her. Elaina ran in the house screaming that she wished her parents could "get their stuff together." Dustin came outside with most of his stuff and said that Elaina was sitting on the floor raising a fit. The plaintiff told Dustin to go back inside and get the rest of his stuff and to tell Elaina to hurry up. Priscilla then came out on the porch and began

yelling at the plaintiff. They began to argue, and Priscilla called the plaintiff a lying son of a bitch. The plaintiff told Priscilla to go back in the house, but she continued to yell and curse at him. The plaintiff then called her a lying bitch. The plaintiff denied saying "fuck off." Kenny Gaffield then came out and began to argue with the plaintiff. Gaffield subsequently went back inside the house to make some phone calls. When DeWitt showed up, the plaintiff told him that he had come to get his kids. DeWitt went into the Gaffield house to find out what was going on. He then came back outside and asked the plaintiff if he would consider leaving Elaina there. The plaintiff said that that would not be a good idea. However, the plaintiff eventually agreed to let her stay. The plaintiff recalled Jones coming over and commenting that he had "pull" and would get the plaintiff's job. The plaintiff remembered having other arguments with Priscilla at the Gaffield residence, but did not remember any other incidents in which he yelled from his vehicle in front of the house.

With regard to the accusation that he encouraged his ex-wife to lie during the course of a previous disciplinary proceeding, the plaintiff testified that Priscilla asked him what to put down in her statement. He told her to put down what she saw and to tell the truth. The complaint against the plaintiff involved a fight between the plaintiff and his former brother-in-law, Roy Pfingsten. The plaintiff stipulated to the allegations in the complaint and pled guilty to the charges. He received a 45-day suspension as a result of that proceeding.

Audrey Kimble testified that she is the older sister of the plaintiff. She gave a written statement to the sheriff's office concerning the altercation between the plaintiff and Roy Pfingsten. Kimble was present at her sister Cindy's house when the fight took place. Kimble testified that she told the truth in her written statement and that her brother never told her what to say. The plaintiff's other sister, Cindy Pfingsten, also testified about the altercation of November 5, 1989. She testified that she gave the police a truthful written statement on November 6 and that the plaintiff did not ask her to lie to the police. According to that statement, her ex-husband started the fight, and the plaintiff struck Roy Pfingsten only after Pfingsten swung at the plaintiff. To her knowledge, plaintiff never told Priscilla to lie about the incident while they were in the plaintiff's kitchen.

Ruby Styck, the mother of the plaintiff, testified that she was present at the Iroquois County courthouse when the judge announced the custody decision in the Russell Styck versus Priscilla Styck case. Kenneth Gaffield and his wife, Mona, were also present. Ruby took

the children home after the hearing, but before doing so told them to say good-bye to their grandparents and to tell them that they would see them soon. Ruby overheard Mr. Gaffield say to his wife that they would get the children back and that the plaintiff would need another job.

On August 22, 1990, the Commission issued its findings and order. The Commission found that the plaintiff was guilty of speeding, but that that was not sufficient cause for discharge. With regard to the allegations of count II, making false statements to the sheriff during an administrative interview, the Commission found that the plaintiff was guilty of making all but one of the alleged false statements. The plaintiff was found guilty of falsely denying making the following statements to Officer Kidwell: (1) that he had been drinking, and (2) that he had quarreled with his wife. He was further found guilty of falsely denying that Officer Kidwell had offered to let him go if he would go straight home, and also that he had stated "no way" when Officer Kidwell told him that he was going 47 miles per hour. He was found not guilty of falsely denying that he told Kidwell that he had been talking to "Joe" about his wife. The Commission's order is silent as to whether or not these false statements were cause for discharge. However, when the Commission orally announced its decision on August 10, 1990, the Commission stated that the conduct alleged in count II was cause for discharge. The plaintiff was also found guilty of the charges in count III, using loud, abusive, and vulgar language, and the Commission found that to be cause for discharge. The Commission further found the plaintiff guilty of the conduct alleged in count IV, urging his ex-wife to lie about certain events, and that was also cause for discharge.

On administrative review, the circuit court reversed the Commission's decision outright. The court reversed both the discharge order and the findings of guilt. The court found that at the very worst the evidence showed that the plaintiff at one time was speeding and that at another time he quarreled with his ex-wife concerning custody of their children. With regard to the other charges, the court said that it was of little significance that the plaintiff could not remember word for word what was said between himself and Officer Kidwell. Regarding the alleged attempt to suborn perjury, the court said that the allegation was highly suspect because it was brought up for the first time more than six months later when the parties were having custody problems. The Commission and the sheriff of Iroquois County now appeal to this court.

■ Before considering the arguments of the parties, we address an important issue not raised. We find that it was improper for the plaintiff to even be charged with the conduct alleged in count IV, urging his ex-wife to lie during the course of a previous disciplinary proceeding, for two reasons. First, the charged conduct was of little consequence given that the plaintiff pleaded guilty in return for a 45-day suspension without pay. Second, the sheriff was essentially trying to discipline the plaintiff for conduct for which he had already been punished. With regard to the fighting incident with the plaintiff's ex-brother-in-law, the plaintiff pleaded guilty and stipulated to the facts in that complaint. In that stipulation, the plaintiff was forced to admit that he commenced an altercation with Roy Pfingsten and that he committed a battery on Pfingsten. He also had to stipulate that he lied to the sheriff when he stated that he did not start the fight and that he did not commit a battery. In exchange for his guilty plea and stipulation, the plaintiff received a 45-day suspension without pay. We find that, implicit in the plaintiff's stipulation that he lied regarding the events, was an admission that his sisters and ex-wife were lying to protect him. By charging the plaintiff in the subsequent proceeding with urging his ex-wife to lie, the sheriff forced the plaintiff into a "catch-22" situation. In order to defend himself at the subsequent hearing, the plaintiff had to argue that he really did not mean what he said in his stipulation and that he had not started the fight. However, the plaintiff should have been estopped to deny matters he had already stipulated to. The sheriff had the plaintiff's stipulation that he lied during a previous proceeding, but then essentially forced him to defend himself in the instant proceeding by saying that he lied when he said he lied. We find that the plaintiff has already served his punishment for making false representations during the previous proceeding, and that it was not consistent with due process for the plaintiff to be later charged with urging his ex-wife to lie during the same proceeding.

The defendants first argue on appeal that the circuit court applied the wrong standard of review in reversing the Commission's findings of guilt. We agree. An administrative agency's findings of fact are to be considered *prima facie* true and correct. (*Blunier v. Board of Fire & Police Commissioners* (1989), 190 Ill. App. 3d 92, 545 N.E.2d 1363.) The reviewing court determines whether the agency's findings are against the manifest weight of the evidence. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115.) Where credibility or conflicting testimony is the issue, the decision of the board should be sustained. (*Sier v. Board of Fire & Police Com-*

*missioners* (1987), 157 Ill. App. 3d 1097, 510 N.E.2d 633.) A reviewing court is only called upon to determine whether there is evidence that fairly tends to support the Commission's decision. The court may not reweigh the evidence or make independent determinations of fact. *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.

The court in this case determined that there was evidence to support the Commission's decision, but then reversed anyway because the court found this evidence not to be credible. The court acknowledged that it should not substitute its judgment for that of the Commission, but then proceeded to do so by reweighing the credibility of the various witnesses. The circuit court was clearly usurping the Commission's function in this respect. The court's acknowledgement that there was evidence to support the Commission's decision should have led the court to affirm the Commission with respect to the finding of guilt. The circuit court's reversal of the guilt portion of the Commission's decision is reversed, and the Commission's findings are affirmed.

While we agree with the defendants that the circuit court incorrectly reversed the Commission's findings of guilt, we agree with the circuit court that discharge was not warranted on the facts of this case. Unlike agency findings of fact, determinations of cause are not *prima facie* true and correct and are subject to judicial review to determine if the charges brought are so trivial as to be unreasonable or arbitrary, if the agency acted on evidence that fairly tended to sustain the charges, and if the decision is related to the requirements of the service. (*Christenson v. Board of Fire & Police Commissioners* (1980), 83 Ill. App. 3d 472, 404 N.E.2d 339.) The Commission was correct in finding that speeding was not cause for discharge. However, on the other counts, we find that the Commission erred in finding cause for discharge to exist. Our supreme court has defined "cause" as " ' "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his [discharge]." ' " (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 435, 603 N.E.2d 477, 484, quoting *Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117, quoting *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277.) With regard to false statements made to superior officers, the key factor is the subject matter of the falsehood and how it directly relates to the policeman's duties to the public. (*Christenson*, 83 Ill.

App. 3d 472, 404 N.E.2d 339.) The subject matter of the plaintiff's falsehoods concerned what he said to a Sheldon police officer when he was stopped for speeding in his personal vehicle. The statements were in no way related to the plaintiff's duties to the public and were so trivial that it was unreasonable and arbitrary for the Commission to find they were cause for discharge. It would probably be of interest to most police officers to learn that they could be subject to discharge for stating two weeks after a conversation that they did not use the words "no way."

With regard to the count charging the plaintiff with using loud, vulgar, and abusive language, the evidence did show that the plaintiff quarreled loudly with his ex-wife in public. The dispute concerned custody of the children. The plaintiff was off duty at the time and was not in his squad car or in uniform. Severe quarrels with ex-spouses regarding custody of children are a common occurrence in our society. While it is certainly unfortunate that such arguments are occasionally aired in public, we do not believe that the plaintiff's decision to engage in such conduct is a substantial shortcoming rendering his continuance in office detrimental to the discipline and efficiency of the service.

Because we find that the Commission was correct in finding that the plaintiff engaged in the alleged conduct, but erred in discharging him, we will remand the cause to the Commission for a more appropriate punishment. The Commission is directed not to consider the allegations in count IV of the complaint in imposing a new penalty. In sum, the decision of the circuit court of Iroquois County is reversed with respect to its reversal of the Commission's determination of guilt, but affirmed with respect to its determination that no cause existed for discharge. The cause is remanded to the Commission for imposition of a less severe penalty.

Affirmed in part; reversed in part and remanded with directions.

McCUSKEY, P.J., and BARRY, J., concur.